**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Robert Michael PUGH, Appellant.**

Superior Court of Pennsylvania.

Argued April 23, 2014.
Filed Oct. 7, 2014.

Wieslaw T. Niemoczynski, Stroudsburg, for appellant.

Michael T. Rakaczewski, Assistant District Attorney, Stroudsburg, for Commonwealth, appellee.

BEFORE: GANTMAN, P.J., FORD ELLIOTT, P.J.E., BENDER, P.J.E., PANELLA, J., DONOHUE, J., ALLEN, J., LAZARUS, J., MUNDY, J., and OLSON, J.

OPINION BY PANELLA, J.

The primary issue before us is the admissibility of expert testimony proffered by the defense in order to question the trustworthiness of a defendant's confession. The trial court granted the Commonwealth's motion *in limine* to preclude the defense from presenting such evidence. In light of recent Pennsylvania Supreme Court case law, we conclude that expert testimony regarding false confessions is impermissible as it provides no pedagogical purpose and interferes with the jury's exclusive duty to assess the credibility of witnesses. We also find Pugh's other issues merit no relief. Accordingly, we affirm.

On January 21, 2010, Pugh's sister, S.P., was taken to Pocono Medical Center, where she was diagnosed with a sexually transmitted disease ("STD"). S.P. was 13 years-old at the time. Because of her age and diagnosis, the hospital reported the incident to authorities.

In response, Trooper Patrick Finn of the Pennsylvania State Police interviewed S.P., at which time she stated that Pugh had drugged and raped her. Several days later, Trooper Finn contacted Pugh *via* telephone, and convinced Pugh to come to the police station to be interviewed. During his interview, Pugh admitted to, among other things, drugging and raping S.P. on multiple occasions. The interrogation and confession were not recorded, and Pugh was subsequently charged with several counts of rape and related offenses.

While incarcerated, Pugh soon recanted his confession, claiming that his confession had been coerced. Additionally, approximately one month after Pugh's arrest, his step-sister, M.Z., informed authorities that she had been diagnosed with the same STD as S.P. Ultimately, medical testing determined that Pugh was not suffering from this type of STD. M.Z. stated that she believed that she had contracted the disease from her husband. When presented with these circumstances, S.P. did not initially recant her accusations against Pugh; she stated that M.Z.'s husband had also assaulted her. M.Z.'s husband subsequently pled guilty to statutory sexual assault and unlawful contact with a minor pursuant to S.P.'s allegations.

Approximately one month thereafter, S.P. wrote a letter to authorities, recanting her allegations against Pugh. Two months later, S.P. underwent a third interview with the Pennsylvania State Police. S.P. told the State Police that her mother and sister pressured her to recant her allegations against Pugh. Both women subsequently pled guilty to obstructing justice based upon their conduct towards S.P.

Pugh's first trial commenced on March 24, 2011. After the jury was unable to

reach a verdict, the trial court declared a mistrial and scheduled a new trial. Before a new trial could be held, Pugh notified the Commonwealth that he intended to present expert testimony on the phenomenon of false confessions. The Commonwealth responded by filing a motion *in limine*, seeking to exclude, among other things, the expert's testimony on false confessions. Shortly thereafter, the Commonwealth supplemented its motion *in limine* seeking to exclude expert testimony regarding false confessions, and furthermore requested a *Frye*[1] hearing to determine the admissibility of such testimony.

The trial court held a *Frye* hearing and accepted supplemental briefing on the issue. On the eve of trial, the court entered an order that in relevant part granted the Commonwealth's motion *in limine*. At the conclusion of the second trial, the jury found Pugh guilty of rape of an unconscious victim,[2] rape of a substantially impaired person,[3] sexual assault,[4] unlawful contact with a minor (sexual offenses),[5] aggravated indecent assault without consent,[6] aggravated indecent assault (complainant is unconscious or unaware),[7] aggravated indecent assault (person impairs complainant),[8] and incest.[9] The trial court subsequently sentenced Pugh, who then appealed. In a memorandum decision, a panel of this Court affirmed the judgment of sentence and Pugh then applied for reargument *en banc*, which this Court granted.

We begin with Pugh's first issue raised on appeal. In evaluating the denial or grant of a motion *in limine*, our standard of review is the same as that utilized to analyze an evidentiary challenge. *See Commonwealth v. Minich*, 4 A.3d 1063, 1068 (Pa.Super.2010). Pursuant to that standard,

> [t]he admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.

*Id.* (citations omitted). Admissibility of expert testimony on scientific knowledge is governed by Pennsylvania Rule of Evidence 702 which states:

> If scientific, technical or other specialized knowledge beyond that possessed by a layperson will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

Pa.R.E. 702.

There has been a long-standing policy in this Commonwealth of protecting the jury's prerogative to determine credibility from the undue influence that accompanies expert testimony on the subject of credibility of witnesses. *See, e.g., Commonwealth v. Delbridge*, 578 Pa. 641, 855 A.2d 27, 42 (2003) ("[E]xpert testimony will not be permitted when it attempts in any way to

---

1. *Frye v. United States*, 293 F. 1013 (D.C.Cir. 1923).

2. 18 Pa.Cons.Stat.Ann. § 3121(a)(3).

3. 18 Pa.Cons.Stat.Ann. § 3121(a)(4).

4. 18 Pa.Cons.Stat.Ann. § 3124.1.

5. 18 Pa.Cons.Stat.Ann. § 6318(a)(1).

6. 18 Pa.Cons.Stat.Ann. § 3125(a)(1).

7. 18 Pa Cons.Stat.Ann. § 3125(a)(4).

8. 18 Pa.Cons.Stat.Ann. § 3125(a)(5).

9. 18 Pa.Cons.Stat.Ann § 4302.

reach the issue of credibility, and thereby usurp the function of the factfinder."); *Commonwealth v. Dunkle,* 529 Pa. 168, 602 A.2d 830, 837 (1992) (ruling expert testimony on the ability of children to recall events of abuse not admissible); *Commonwealth v. Gallagher,* 519 Pa. 291, 547 A.2d 355 (1988) (holding testimony regarding Rape Trauma Syndrome was not admissible); *Commonwealth v. Rounds,* 518 Pa. 204, 542 A.2d 997, 999 (1988) (ruling expert testimony that victim was not dissembling was not admissible); *Commonwealth v. Seese,* 512 Pa. 439, 517 A.2d 920 (1986) (finding expert testimony that pre-pubescent children do not fabricate stories of sexual abuse not admissible).

This Court has also consistently upheld the exclusion of expert evidence that intrudes upon the duty of the jury to determine credibility of witnesses. *See, e.g., Commonwealth v. D.J.A.,* 800 A.2d 965, 975 (Pa.Super.2002) (precluding testimony on credibility of child's testimony based upon suggestive interview technique). We have also affirmed trial court rulings that prohibited the introduction of expert testimony on the issue of false confessions. *See Commonwealth v. Harrell,* 65 A.3d 420, 429–431 (Pa.Super.2013); *Commonwealth v. Szakal,* 50 A.3d 210, 228 (Pa.Super.2012). Recently, our Supreme Court decided a case that directly dealt with admissibility as it pertains to experts who seek to testify about the phenomena of false confession.

The Supreme Court's recent decision, *Commonwealth v. Alicia,* —— Pa. ——, 92 A.3d 753 (2014), held that expert testimony on the phenomenon of false confessions would impermissibly invade the jury's exclusive role as the sole arbiter of credibility. In *Alicia,* the defendant was accused of murder and other related charges. The police questioned the defendant and he eventually confessed to the murder. De-

fendant later moved to use a false confession expert, citing his own low intelligence, mental health issues, and that his written confession contained a number of hallmarks which indicated his confession was false. The expert proffered by the defendant claimed, during an a hearing on the admissibility of his testimony, that he would testify generally about police interrogation methods that can put an innocent suspect at risk and also about the specific ones used in defendant's case. The trial court held that the testimony was permissible as to the general aspects of police interrogation techniques, but prohibited the expert from providing any testimony as to the specific allegations in defendant's case. This Court, in a divided panel, affirmed the decision.

The Supreme Court of Pennsylvania, following the lead of the United States Court of Appeals for the Tenth Circuit in *United States v. Benally,* 541 F.3d 990 (10th Cir. 2008), reversed. The Court found that "expert testimony such as the proposed testimony of [the defense expert] Dr. Leo constitutes an impermissible invasion of the jury's role as the exclusive arbiter of credibility." *Alicia,* 92 A.3d at 764. First, the Court noted that regardless of whether an expert opined on whether the confession was true or false, the effect would be the same: jurors would be persuaded to disregard the confession and credit the defense's testimony that it was a lie. *See id.* Second, if the expert testimony were allowed, the Commonwealth would likely counter with its own rebuttal expert testimony, which would lead to befuddlement rather than serve to educate the jury. *See id.*

Ultimately, the Pennsylvania Supreme Court found that "the matter of whether Appellee's confession is false is best left to the jury's common sense and life experience, after proper development of relevant

issues related to, among other things, the particular circumstances surrounding the elicitation of his confession, using the traditional and time-honored techniques of cross-examination and argument." *Id.*

■ Instantly, there is no dispositive factual or legal basis with which to distinguish Pugh's claim from that of the recent Supreme Court decision in *Alicia.* Accordingly, as we can find no distinguishable difference between the claim advanced by Pugh and the Supreme Court's decision in *Alicia,* we must conclude that Pugh's claim warrants no relief.

Pugh next argues that the trial court erred in precluding from questioning M.Z.'s husband, Rocky Alverio, on issues such as her sexual history and S.P.'s motive to fabricate allegations against Pugh. The trial court states that it precluded this testimony based upon, among other things, the Pennsylvania Rape Shield statute. Pursuant to Pennsylvania's Rape Shield statute:

> Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

18 Pa. Cons.Stat.Ann. § 3104(a).

Specifically, Pugh explains as follows:

> The veracity of the complaining witness is the core issue in this case. Defendant wanted to call Rocky Alverio as a witness in his defense to challenge the accuser's veracity due to the accuser's sexual relationship with Alverio constituting the cause, by motive, interest, or bias

resulting in her false accusations against Robert Pugh.

Appellant's Brief at 41. Pugh contends that "[s]uch an inquiry will have probative value regarding veracity of the [victim] which is exculpatory to [Pugh]." *Id.,* at 42. We disagree.

■ In the present case, it is uncontested that at trial, Rocky Alverio was permitted to testify that he had engaged in sexual intercourse with S.P. Consequently, the jury was presented with ample evidence establishing that, at the medical center, S.P. falsely claimed to be a virgin. We agree with the trial court that any additional details regarding the sexual encounters between Rocky Alverio and S.P. were unnecessary and would have violated the Rape Shield statute. Therefore, we find no abuse of discretion in the trial court's limitation of Rocky Alverio's testimony.

Pugh next contends that the trial court erred in refusing to provide the jury with his proposed instruction on unrecorded custodial interrogations. We review a trial court's jury instruction as follows:

> When evaluating jury instructions, the charge must be read as a whole to determine whether it was fair or prejudicial. The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration.

*Commonwealth v. Baker,* 24 A.3d 1006, 1022 (Pa.Super.2011) (citation omitted), *aff'd* 621 Pa. 401, 78 A.3d 1044 (2013). "A jury charge is erroneous if the charge as a whole is inadequate, unclear, or has a tendency to mislead or confuse the jury rather than clarify a material issue." *Commonwealth v. Pope,* 14 A.3d 139 (Pa.Super.2011) (citation omitted), *appeal denied,* 613 Pa. 644, 32 A.3d 1277 (2011). "Therefore, a charge will be found ade-

quate unless the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said." *Id.*

■ Here, Pugh complains that he was prejudiced by the failure to instruct the jury that the ideal evidence regarding his confession was not available, despite the ability of the Commonwealth to provide for it, and therefore that the jury should consider this fact in determining credibility. The trial court states that it refused the proposed instructions because it had adequately covered the issue in other instructions. After reviewing the jury charge as a whole, we agree.

The trial court provided multiple instructions addressing Pugh's confession, the credibility of witnesses, and the consideration of evidence. Those instructions adequately addressed the concepts that Pugh sought to cover in the proposed instructions. We therefore conclude that the absence of these instructions did not prejudice Pugh. Accordingly, we find no abuse of discretion in the trial court's rejection of the proposed jury instructions addressing the absence of a video recording of Pugh's custodial interrogation.[10]

■ In his final issue on appeal, Pugh argues that the trial court erred by failing to grant his motion for mistrial after the Commonwealth allegedly committed a *Brady*[11] violation. In *Brady*, the United States Supreme Court held that a defendant's due process rights are violated when the prosecution withholds favorable, material evidence from the defense. To prove a *Brady* violation, the defendant bears the burden of demonstrating that:

"(1) the prosecutor has suppressed evidence; (2) the evidence, whether exculpatory or impeaching, is helpful to the defendant, and (3) the suppression prejudiced the defendant." *Commonwealth v. Koehler*, 614 Pa. 159, 36 A.3d 121, 133 (2012) (citation omitted). Therefore, even if the first two prongs have been established, a defendant must establish that he was prejudiced by the failure to disclose. *See Commonwealth v. Appel*, 547 Pa. 171, 689 A.2d 891 (1997). To establish prejudice, the defendant must prove that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* (citation omitted).

Pugh asserts that the Commonwealth committed a *Brady* violation when the prosecution failed to turn over two pages of Pugh's medical testing results for STDs. Specifically, Pugh challenges the Commonwealth's failure to timely disclose all email correspondence regarding his STD testing and results. The existence of the withheld correspondence was apparently revealed during examination of one of the Commonwealth's witnesses. That surprise revelation, according to Pugh, disrupted his defense strategy, entitling him to a mistrial.

The trial court states that it denied Pugh's motion for a mistrial because the alleged failure to disclose did not prejudice Pugh. *See* Trial Court Opinion, 3/13/2012, at 10–11. Significant to the trial court's analysis was the fact that the information set forth in the withheld documents was contained within a separate final report document that Appellant received from the Commonwealth in a timely manner. *See*

---

**10.** Furthermore, we note that Pugh cites to no legal authority requiring instructions on the absence of recorded interrogations. Indeed, while acknowledging that recording such interrogations is not mandatory in Pennsylvania, Appellant invites us to create such a rule. Creation of such rules and regulations, how-

ever, is a role reserved for the General Assembly, not the courts. Consequently, we decline Appellant's invitation.

**11.** *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

*id.,* at 10. Therefore, the trial court reasoned that Appellant was not prejudiced by the missing documents, as he had the relevant information all along. *See id.*

■ We find no error in the trial court's analysis. Indeed, even assuming that the Commonwealth should have disclosed the subject documents prior to trial, and accepting that the manner in which the documents were disclosed to Pugh was inconvenient, Pugh has not established that he suffered prejudice from the untimely disclosure. Consequently, we find no abuse of discretion in the trial court's denial of Appellant's motion for a mistrial, and conclude that Pugh's final issue on appeal merits no relief.

Judgment of sentence affirmed. Jurisdiction relinquished.

President Judge GANTMAN, President Judge Emeritus FORD ELLIOTT, President Judge Emeritus BENDER, and Judges ALLEN, LAZARUS, and MUNDY join the opinion.

Judge OLSON files a concurring opinion in which Judge DONOHUE joins.

## CONCURRING OPINION BY OLSON, J.:

I agree with the learned majority that we must affirm Appellant's judgment of sentence. However, I do not agree with the majority's analysis with respect to Appellant's second and third issues raised on appeal. Therefore, I write separately.

In his second issue on appeal, Appellant contends that the trial court erred by limiting his examination of Raziel Alverio ("Alverio").[1] Specifically, Appellant argues that, "Defense counsel wished to inquire at trial only on the issue of veracity

with respect to [S.P.]'s representation at the medical center that she was a virgin when that representation could not have been true under any circumstance then existing." Appellant's Brief at 42. The learned majority agrees with the trial court that Appellant's proposed examination of Alverio violated Pennsylvania's Rape Shield Law. *See* Majority Opinion, *ante* at 824. However, I do not believe that the Rape Shield Law is applicable in this case.

The Rape Shield Law provides that:

Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

18 Pa.C.S.A. § 3104(a). Our Supreme "Court [has] held that the statutory word **conduct** does not include prior sexual assaults and that evidence of prior sexual assaults is admissible as long as such evidence is relevant and material under the traditional rules of evidence." *Commonwealth v. Fink,* 791 A.2d 1235, 1241 (Pa.Super.2002) (emphasis added; internal quotation marks and footnote omitted), *citing Commonwealth v. Johnson,* 536 Pa. 153, 638 A.2d 940, 942 (1994); *see Commonwealth v. Holder,* 815 A.2d 1115, 1118–1119 (Pa.Super.2003), *appeal denied,* 573 Pa. 703, 827 A.2d 430 (2003) (citation omitted); *Commonwealth v. L.N.,* 787 A.2d 1064, 1069 (Pa.Super.2001), *appeal denied,*

---

1. At times, Alverio is identified as Rocky Alverio; however, his name is Raziel Alverio.

*See* N.T., 9/15/11, at 3.

569 Pa. 680, 800 A.2d 931 (2002) (citation omitted). In this case, any sexual contact between Alverio and S.P. was a sexual assault as S.P. had yet to reach the age of consent.[2] *See* 18 Pa.C.S.A. § 3122.1 (age of consent in Pennsylvania is 16); *Commonwealth v. Slocum*, 86 A.3d 272, 283 n. 3 (Pa.Super.2014) (same). Accordingly, evidence of Alverio's sexual contact with S.P. is not "past sexual conduct" that is protected by the Rape Shield Law, and, therefore, the Rape Shield Law does not apply to this case.

Although the trial court's reliance on the Rape Shield Law was misplaced, its ultimate conclusion to bar further examination of Alverio regarding S.P.'s prior sexual history was correct. As noted above, Appellant only sought to further examine Alverio to prove that S.P.'s statement at the medical center that she was a virgin was medically false. *See* Appellant's Brief at 42. The trial court permitted Alverio to be examined regarding the fact that he had sexual intercourse with S.P. *See* N.T., 9/15/11, at 17. Thus, the jury was made aware of the fact that Appellant was attempting to elicit. Any further inquiry would have had no probative value and would have been highly prejudicial. Thus, the evidence was properly excluded. *See* Pa.R.Evid. 403 ("[R]elevant[ ] evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice[.]");[3] *see also Commonwealth v. Turner*, 73 A.3d 1283, 1286 n. 5 (Pa.Super.2013), appeal denied, —— Pa. ——, 91 A.3d 162 (2014) (citation omitted) ("[T]his Court may affirm a trial court's decision if it is correct on any basis".).

In his third issue on appeal, Appellant argues that the trial court erred by denying his requested jury instruction relating to the officer's credibility regarding the voluntariness of Appellant's confession given that it was not recorded. The learned majority concludes that the trial court "had adequately covered the issue in other instructions." Majority Opinion, *ante* at 825. My review of the jury charge reveals that, although the jury instructions discussed Appellant's confession, the credibility of witnesses and the consideration of evidence, the failure to record Appellant's custodial interrogation was not addressed. *See* N.T., 9/19/11, at 96–126. However, I ultimately agree that the trial court did not abuse its discretion in declining to charge the jury regarding the failure to record Appellant's custodial interrogation.

Appellant implicitly argues that the failure to record his custodial interrogation violated his right to due process. In *Commonwealth v. Harrell*, a panel of this Court held that the due process clause of the Pennsylvania Constitution does not require that custodial interrogations be recorded. 65 A.3d 420, 429 (Pa.Super.2013), *citing Commonwealth v. Craft*, 447 Pa.Super. 371, 669 A.2d 394 (1995) (Del Sole, J. opinion announcing the judgment of the court). "The Fourteenth Amendment and Article I, § 9 of the Pennsylvania Constitution guarantee due process protections. Our Supreme Court has ruled that these provisions are essentially coextensive." *Commonwealth v. Nase*, —— A.3d ——, ——, 2014 WL 4415061, *2 (Pa.Super. Sept. 9, 2014). (footnote and citation omitted). Thus, the question is whether recording is required under the Fourteenth

---

2. Alverio pled guilty to statutory sexual assault for the sexual contact between himself and S.P. *See Commonwealth v. Alverio*, CP–45–CR0000995–2010.

3. The quoted text is that of the former Rule 403, which was in place at the time of Appellant's trial. Effective March 18, 2013, former Rule 403 was rescinded and replaced with current Rule 403. *See* 43 Pa.B. 620 (Feb. 2, 2013).

Amendment of the United States Constitution.

There is no authority for the proposition that recording is required by the Fourteenth Amendment. The Alaska Supreme Court is the only court to have held that failure to record a custodial interrogation violates a defendant's right to due process; however, it did so based upon the Alaska Constitution's due process clause, and not the Fourteenth Amendment. *Stephan v. Alaska,* 711 P.2d 1156, 1162–1165 (Alaska 1985). This issue has been litigated in courts throughout the country for at least three decades and not a single jurisdiction has held that recording is required by the Fourteenth Amendment. Federal Courts have similarly aligned themselves with this view. At least 11 United States Courts of Appeals have held that neither the Fifth nor Fourteenth Amendment requires that custodial interrogations be recorded.[4] *See United States v. Meadows,* 571 F.3d 131, 147 (1st Cir.2009); *United States v. Tykarsky,* 446 F.3d 458, 477 (3d Cir.2006) ("Whatever the merits of the policy arguments in favor of requiring the recording of interrogations may be, it is clear that such recording is not mandated by the United States Constitution."); *United States v. Williams,* 446 Fed.Appx. 587, 591

(4th Cir.2011) (*per curiam*); *United States v. Cardenas,* 410 F.3d 287, 296 (5th Cir.2005); *United States v. Smith,* 319 Fed.Appx. 381, 384 (6th Cir.2009) (*per curiam*); *United States v. Montgomery,* 390 F.3d 1013, 1017 (7th Cir.2004); *United States v. Williams,* 429 F.3d 767, 772 (8th Cir.2005); *United States v. Toscano–Padilla,* 996 F.2d 1229 (9th Cir.1993) (table) (*per curiam*); *United States v. Zamudio,* 211 F.3d 1279 (10th Cir.2000) (table); *United States v. Boston,* 249 Fed.Appx. 807, 810 (11th Cir.2007) (*per curiam*); *United States v. Yunis,* 859 F.2d 953, 961 (D.C.Cir.1988).

In *Harrell,* this Court restated the law as it stood when *Craft* was decided, *i.e.,* only two states required custodial interrogations to be recorded.[5] *Harrell,* 65 A.3d at 429. The laws of our sister states have changed significantly since *Craft.*[6] Today, 24 states and the District of Columbia require the recording of custodial interrogations in certain circumstances and Vermont will begin requiring such recording in October 2015.[7] *See Stephan,* 711 P.2d at 1162–1165; Ark.R.Crim.P. 4.7; Cal.Penal Code § 859.5; Conn. Gen.Stat. § 54–1o; D.C.Code § 5–116.01; 705 Ill.Comp. Stat. 405/5–401.5; 725 Ill.Comp.Stat.

---

4. The same due process requirements that apply to the states through the Fourteenth Amendment apply to the federal government through the Fifth Amendment. *Raditch v. United States,* 929 F.2d 478, 481 (9th Cir. 1991) (citation omitted).

5. In addition to Alaska, the Minnesota Supreme Court required (and still requires) recording pursuant to its supervisory authority. *Minnesota v. Scales,* 518 N.W.2d 587, 591–592 (Minn.1994).

6. *See* Thomas P. Sullivan's *Compendium: Electronic Recording of Custodial Interrogations* (July 11, 2014), available at http://www.nacdl.org/WorkArea/DownloadAsset.aspx?id=33287&libID=33256 (last accessed Sept. 15, 2014).

7. Each state differs with respect to the scope of its recording requirement. In some states, all custodial interrogations must be recorded. Other states only require that a custodial interrogation be recorded if police are investigating certain enumerated offenses. Furthermore, some states have certain exceptions to the recording requirement. For example, some states do not require a custodial interrogation be recorded if the person being interrogated requests that the interrogation not be recorded. As the exact nature of each state's recording requirements is immaterial to my analysis, I do not enumerate the nuances of each state's requirements.

5/103–2.1; Ind.R.Evid. 617; Me.Rev.Stat., title 25, § 2803–B(1)(K); Md.Code, Crim. Proc. § 2–402; Mich. Comp. Laws § 763.8; *Minnesota v. Scales*, 518 N.W.2d 587, 591–592 (Minn.1994); Mo.Rev.Stat. ch. 590.700; Mont.Code § 46–4–408; Neb.Rev.Stat. § 29–4503; N.J.R.Crim.P. 3:17; N.M. Stat. § 29–1–16; N.C. Gen.Stat. § 15A–211; Ore.Rev.Stat. § 133.400; Tex.Code Crim. Proc., art. 38.22; Wis. Stat. § 968.073; *see also* 2014 Vt. Adv. Legis. Serv. 193 (effective Oct. 1, 2015).[8]

Although beginning next year, a majority of jurisdictions in the United States will require custodial interrogations to be recorded in certain circumstances, that does not alter my analysis of the discrete issue of whether the Fourteenth Amendment requires the recording of custodial interrogations. On that issue, states are unanimous that it does not.

The fact that the Fourteenth Amendment does not require the recording of custodial interrogations is not dispositive of whether the trial court abused its discretion in rejecting a jury instruction regarding the credibility to be accorded Appellant's unrecorded confession. No appellate court in this Commonwealth has addressed the issue of whether a trial court is required to give such an instruction when so requested by the defendant.

At least two states require a jury instruction upon request when an interrogation is not recorded. *Massachusetts v. DiGiambattista*, 442 Mass. 423, 813 N.E.2d 516, 533 (2004); N.J.R.Crim.P. 3:17(e). The instruction is required in Massachusetts, however, because failing to record an interrogation goes against the preferred procedure of the Supreme Judicial Court of Massachusetts. *DiGiambattista*, 813 N.E.2d at 533. Likewise, the failure to record an interrogation violates a rule of criminal procedure in New Jersey; thus, such an instruction has been mandated. In Pennsylvania; however, no statute, rule of court, or court decision mandates that custodial interrogations be recorded. Thus, the reasons that an instruction is appropriate in Massachusetts and New Jersey do not apply to Pennsylvania.

The proposed instruction submitted by Appellant instructs the jury that the failure to record an interrogation can be considered when determining the credibility of the police officer's testimony that the confession was voluntary. A criminal defendant is not entitled to a jury instruction regarding every single factor that may be considered when evaluating a witness' credibility. *See Commonwealth v. Stoltzfus*, 462 Pa. 43, 337 A.2d 873, 883 (1975). The trial court could reasonably determine that, "To have given the charge requested would have given undue weight to a single factor in the jury's complex credibility analysis. Consequently, ... the trial court acted within its discretion in rejecting the proposed instruction." *Commonwealth v. Powers*, 395 Pa.Super. 231, 577 A.2d 194, 197 (1990).

**8.** Appellant argues that Iowa, New Hampshire, and Massachusetts also mandate recording of custodial interrogations. Those three jurisdictions, however, have not implemented mandatory recording. *See Iowa v. Hajtic*, 724 N.W.2d 449, 456 (Iowa 2006) ("We believe electronic recording, particularly videotaping, of custodial interrogations should be encouraged, and we take this opportunity to do so."); *Massachusetts v. DiGiambattista*, 442 Mass. 423, 813 N.E.2d 516, 532–535 (2004) (requiring a jury instruction be given if a custodial interrogation is not recorded); *New Hampshire v. Barnett*, 147 N.H. 334, 789 A.2d 629, 632–633 (2001) ("[W]here the incomplete recording of an interrogation results in the exclusion of the tape recording itself, evidence gathered during the interrogation may still be admitted in alternative forms, subject to the usual rules of evidence.").

Furthermore, if this Court were to require such an instruction upon request in all cases in which an interrogation was not recorded, it would strongly suggest that such recording is mandatory. As noted below, that is not the job of this Court. As such, I conclude that the trial court did not abuse its discretion in declining to give Appellant's suggested instruction.

I also believe that one of the learned majority's footnotes may lead to confusion. The learned majority states that:

Furthermore, we note that [Appellant] cites to no legal authority requiring instructions on the absence of recorded interrogations. Indeed, while acknowledging that recording such interrogations is not mandatory in Pennsylvania, Appellant invites us to create such a rule. Creation of such a rules and regulations, however, is a role reserved for the General Assembly, not the courts. Consequently, we decline Appellant's invitation.

Majority Opinion, *ante* at 825 n. 10. I do not interpret this footnote as prohibiting a trial court from giving an instruction similar to that requested by Appellant in this case. Instead, the learned majority merely holds that there is no requirement that such an instruction be given. Accordingly, I believe that there is no legal prohibition to giving such an instruction if a trial court, in the exercise of its discretion, believes such an instruction is appropriate under the facts and circumstances of the case before it.

Furthermore, I must respectfully disagree with the learned majority's statement that only the General Assembly may create a rule requiring that custodial interrogations be recorded. As noted above, although a majority of states that have adopted such a rule have done so through the legislative process, one court of last resort has done so under its supervisory authority and three jurisdictions have done so through rulemaking authority. Thus, such a rule can be promulgated by either our Supreme Court or our General Assembly, and not just our General Assembly. *See Harrell,* 65 A.3d at 450 (Donohue J. dissenting) (The "policy-based decision to compel recordation of all police interrogations is a step that we, as an intermediate appellate court, cannot take. Our legislature and our Supreme Court are empowered to do so.").

In sum, I believe that the Rape Shield Law is not applicable in this case; however, further examination of Alverio was properly excluded pursuant to Pennsylvania Rule of Evidence 403. I also believe that the jury charge did not address the failure to record Appellant's custodial interrogation; however, the trial court did not abuse its discretion in declining to give Appellant's suggested charge. Therefore, I concur in the result reached by the learned majority and agree that Appellant's judgment of sentence must be affirmed.

Judge DONOHUE joins this Concurring Opinion.