J-S65013-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JASON KOEHLER | |
| Appellant | No. 3059 EDA 2013 |

Appeal from the PCRA Order October 28, 2013
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0000447-2004

BEFORE:  PANELLA, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY PANELLA, J.                    **FILED JANUARY 30, 2015**

Appellant, Jason Koehler, appeals *pro se* from the order entered on October 28, 2013, by the Honorable Margherita Patti Worthington, which denied his petition filed pursuant to the Post-Conviction Relief Act ("PCRA").[1] After careful review, we affirm.

A panel of this Court previously summarized the history of this case as follows:

> [I]n the early morning hours of February 13, 2004, [Appellant] entered the home of Jennifer Cullinan to purchase crack cocaine from Jason Gray, whom [Appellant] has dealt with on previous occasions. Ms. Cullinan, Mr. Gray, and Jose Joubert were all inside [Ms. Cullinan's home] at the time. According to Mr. Joubert, [Appellant] had appeared at the residence with a loaded

---

[*] Retired Senior Judge assigned to the Superior Court.
[1] 42 Pa.Cons.Stat.Ann. §§ 9541-9546.

.357 revolver. While Mr. Joubert was putting wood in the fireplace, [Appellant] shot Mr. Joubert in the lower left side of his back and face. He fell to the ground. Mr. Joubert, although unable to see anything at this time, was able to hear an ensuing struggle between Mr. Gray and [Appellant]. Another shot was fired and Mr. Joubert heard Mr. Gray fall to the ground. Seconds later, Mr. Joubert heard Ms. Cullinan screaming, asking [Appellant] what he had done. He heard another struggle, this time between Ms. Cullinan and [Appellant]. Ms. Cullinan was repeatedly telling [Appellant] to get off her. Another shot was fired and Mr. Joubert did not hear Ms. Cullinan again.

[Appellant's] version of the events is quite different. [Appellant] states that he had been to the Cullinan residence two previous times that day to purchase drugs. During the second time, [Appellant] says he [left] the .357 revolver with Mr. Gray as a loan for more crack cocaine because he did not have any money. On his third time back at Ms. Cullinan's home, [Appellant] stated that Mr. Joubert, whom he had never seen before, let him in. [Appellant] stood at the arm of the couch closest to the door, Mr. Joubert was to his left, and Mr. Gray was to his right. Ms. Cullinan was in the kitchen. While Mr. Joubert was handing [Appellant] a bag of drugs, [Appellant] heard a noise to his right side coming from where Mr. Gray was.

[Appellant] states that Mr. Gray was pulling a rifle, which had been chambered, from underneath the couch and was pointing it in his direction. Thinking that his life was in danger, [Appellant] grabbed the .357 revolver from the arm of the couch, stepped toward Mr. Gray so that he was approximately two feet from him and shot him in the "face area." The gun made contact with Mr. Gray's head when it went off. Believing that Mr. Joubert was running for more weapons, [Appellant] turned to his left and fired three more times in his direction, hitting both Mr. Joubert and Ms. Cullinan. Then [Appellant], seeing the bag of crack cocaine that Mr. Joubert was trying to hand him, picked up the bag and ingested some of the drugs.

The next set of facts is relatively uncontradicted. [Appellant] and Mr. Daniels, [Appellant's accomplice,] began looking for money and drugs throughout the house, taking anything they could find. [Appellant] even [went] as

far to stick his hands in all three of the victim's [sic] pants pockets to find more. [Appellant] then open[ed] the basement door, grab[bed] each victim one at a time and thr[ew] their bodies down the stairs. Mr. Joubert hear[d] someone mention that he [was] still breathing and to finish him. The other person respond[ed] that Mr. Joubert [was] going to die slowly. Once [Appellant] and his accomplice [left] the residence, Mr. Joubert [was] able to crawl up the stairs and eventually out of the residence to safety.

Trial Court Opinion (Post-Sentence Motion), 11/24/10, at 42-43.

On November 2, 2005, Appellant pled guilty to two counts of third degree murder and aggravated assault. Shortly thereafter, Appellant filed a motion to withdraw his guilty plea before sentencing. On March 24, 2006, the trial court denied this motion and sentenced Appellant to an aggregate sentence of not less than 40 years nor more than 80 years['] imprisonment.

Appellant filed a post-sentence motion which the trial court denied on September 7, 2006. Appellant appealed, challenging the trial court's denial of his request to withdraw his guilty plea prior to sentencing. This Court reversed, vacating Appellant's judgment of sentence and remanding the case for trial. The Commonwealth filed a Petition for Allowance of Appeal, which our Supreme Court denied on November 17, 2008.

Appellant proceeded to a jury trial after which he was convicted of the aforementioned offenses on October 21, 2009. On the same day, the jury imposed a sentence of life imprisonment. On December 11, 2009, the trial court imposed a life sentence without parole to be followed by a sentence of not less than 35 years nor more than 73 years. On December 21, 2009, Appellant filed a post-sentence motion seeking reconsideration of his sentence. The trial court did not enter an order denying Appellant's post-sentence motion until June 1, 2010. Appellant appealed to this Court on June 24, 2010.

*Commonwealth v. Koehler*, 1763 EDA 2010, at 1-4 (Pa. Super., filed June 27, 2011) (mem. op.). On appeal, this Court affirmed Koehler's judgment of sentence and the Pennsylvania Supreme Court denied allocatur.

Koehler filed a lengthy *pro se* PCRA petition, after which the PCRA court appointed counsel. PCRA counsel filed a brief, which largely incorporated by reference Koehler's original *pro se* petition. On August 8, 2013, the PCRA court ordered counsel to file within 30 days an additional brief which did not incorporate by reference the *pro se* petition, and which clarified and distilled Koehler's claims. Counsel did not comply with the court's directive.

A PCRA evidentiary hearing was conducted on June 25, 2013. PCRA counsel filed a brief that addressed only three of the approximately fifteen issues raised in Koehler's *pro se* brief. The PCRA court entered an order denying Koehler's petition and this timely appeal followed.

During the pendency of this appeal, Koehler filed in this Court a request to proceed *pro se* due to the ineffective assistance of PCRA counsel. By order dated January 1, 2014, we remanded the proceedings and instructed the PCRA court to conduct a hearing pursuant to ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998), in order to determine whether Koehler's waiver of counsel was knowing, intelligent, and voluntary. After the PCRA court conducted the ***Grazier*** hearing on March 3, 2014, it permitted Koehler to proceed *pro se*.

On appeal, Koehler raises the following issues for our review:

I.    Whether PCRA counsel's ineffective assistance was so egregious that it nullified the purpose of the PCRA causing a complete denial of the opportunity to obtain relief?

II.     Whether trial counsel rendered ineffective assistance by: failing to obtain an expert report analyzing blood located on the barrel of a rifle; failing to obtain certain criminal records; and failing to investigate or call witnesses requested by the defendant?

III.    Whether direct appeal counsel rendered ineffective assistance by: failing to raise a claim that police, in bad faith, either destroyed or failed to properly document exculpatory evidence; and by failing to argue a Brady claim with regard to certain criminal records[?]

Appellant's Brief at 4.

"Our standard of review of a trial court order granting or denying relief under the PCRA calls upon us to determine whether the determination of the PCRA court is supported by the evidence of record and is free of legal error." *Commonwealth v. Barndt*, 74 A.3d 185, 191-192 (Pa. Super. 2013) (citation and internal quotation marks omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Id*. (citation omitted). The PCRA court's credibility determinations are binding on this Court, where there is record support for those determinations. *See Commonwealth v. Timchak*, 69 A.3d 765, 769 (Pa. Super. 2013).

To establish ineffectiveness of counsel, "a PCRA petitioner must show the underlying claim has arguable merit, counsel's actions lacked any reasonable basis, and counsel's actions prejudiced the petitioner." *Commonwealth v. Jones*, 71 A.3d 1061, 1063 (Pa. Super. 2013) (citation omitted), *appeal denied*, 84 A.3d 1062 (Pa. 2014). "Prejudice means that, absent counsel's conduct, there is a reasonable probability the outcome of

the proceedings would have been different." ***Id***. (citation omitted). If a reasonable basis exists for the particular course chosen by counsel, the inquiry ends and counsel's performance is deemed constitutionally effective. ***See Commonwealth v. Lauro***, 819 A.2d 100, 106 (Pa. Super. 2003). Failure to satisfy any prong of the test requires that the claim be dismissed. ***See Commonwealth v. O'Bidos***, 849 A.2d 243, 249 (Pa. Super. 2004).

In his first issue, Koehler raises a blanket challenge to PCRA counsel's effectiveness. We note, however, that Koehler did not challenge his PCRA counsel's effectiveness before the PCRA court.[2] As such, this claim is waived. ***See Commonwealth v. Henkel***, 90 A.3d 16, 20 (Pa. Super. 2014), ***appeal denied***, 101 A.3d 785 (Pa. 2014) (claims of PCRA counsel's ineffectiveness may not be raised for the first time on appeal).

Koehler's remaining claims challenge the effectiveness of trial counsel. In his second issue on appeal, Koehler alleges that trial counsel was ineffective for failing to obtain blood spatter analysis and for failing to request the criminal records of victims Jason Gray and Jose Joubert. However, Koehler has not himself obtained either the blood spatter analysis or the aforementioned criminal records for our review. As we are prevented from examining the very evidence Koehler now deems trial counsel was

_____

[2] Although Koehler filed an application to proceed *pro se* on appeal on the basis of PCRA counsel's ineffectiveness, he did not raise the issue of counsel's effectiveness during the ***Grazier*** hearing, and the PCRA court did not have the opportunity to address this issue below.

ineffective for failing to obtain, we are unable to determine in what way Koehler was prejudiced by counsel's alleged misconduct in this regard. Accordingly, these claims fail.

We likewise find no merit to Koehler's claim that trial counsel was ineffective for failing to investigate or call certain witnesses. Trial counsel will not be deemed ineffective for failing to call a witness to testify unless it is demonstrated that:

> (1) the witness existed; (2) the witness was available; (3) counsel knew of, or should have known of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony was so prejudicial to petitioner to have denied him or her a fair trial.

***Commonwealth v. Brown***, 18 A.3d 1147, 1160-1161 (Pa. Super. 2011) (citation omitted).

Instantly, although Koehler insists that trial counsel was informed of the existence of the alleged witnesses, he does not establish the identity of any witnesses or their availability at the time of trial. Koehler does not even set forth the substance of the witnesses' testimony. Without this necessary evidence we are unable to conclude that the the absence of the testimony was so prejudicial to petitioner to have denied him or her a fair trial. Accordingly, Koehler's claim that counsel was ineffective for failing to call certain unidentified witnesses is without merit.

Koehler presents two related claims in his third and final issue. Koehler first argues that trial counsel was ineffective for failing to raise a claim that the police, in bad faith, destroyed or failed to preserve potentially

exculpatory evidence. Koehler references a Pennsylvania State Police lab report indicating that three swabs of human blood were taken from the rifle used in the murders and retained for potential DNA analysis. *See* Appellant's Brief at 22-23. Koehler does not indicate that he has independently attempted to ascertain the existence of the blood swabs; nor does he present this evidence for our review. Koehler's claim that the police destroyed or failed to preserve this evidence, or even that the alleged evidence would prove exculpatory, is purely speculative. We therefore find no basis on which to deem counsel ineffective for failing to advance this specious argument.

Koehler alternatively contends that counsel was ineffective for failing to argue that the Commonwealth's alleged failure to provide the blood swab evidence violated the Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83 (1963).

> In *Brady*, the United States Supreme Court held that a defendant's due process rights are violated when the prosecution withholds favorable, material evidence from the defense. To prove a *Brady* violation, the defendant bears the burden of demonstrating that: (1) the prosecutor has suppressed evidence; (2) the evidence, whether exculpatory or impeaching, is helpful to the defendant, and (3) the suppression prejudiced the defendant. Therefore, even if the first two prongs have been established, a defendant must establish that he was prejudiced by the failure to disclose. To establish prejudice, the defendant must prove that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.

*Commonwealth v. Pugh*, 101 A.3d 820, 825 (Pa. Super. 2014) (internal citations and quotation marks omitted).

Herein, Koehler fails to satisfy his burden of demonstrating *any* of the three prongs required to establish a *Brady* violation. Koehler does not demonstrate that the Commonwealth suppressed the evidence, that the evidence was exculpatory, or in what way he was prejudiced by the alleged suppression. This claim is patently meritless.[3]

As we find no merit to any of the claims Koehler raises on appeal, we affirm the order denying PCRA relief.

Order affirmed.

Judge Platt joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/30/2015

---

[3] Koehler bootstraps to his *Brady* claim the Commonwealth's alleged failure to produce the criminal records of Jason Gray and Jose Joubert. *See* Appellant's Brief at 24-25. As Koehler similarly fails to satisfy any of the three prongs necessary to establish a *Brady* violation with regard to this bald allegation, we find this claim is also without merit.