J-S02009-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MALIK WILFORD-WILLIAMS, | : | |
| | : | |
| Appellant | : | No. 201 EDA 2024 |

Appeal from the Judgment of Sentence Entered December 8, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0007813-2021

BEFORE:  NICHOLS, J., MURRAY, J., and BENDER, P.J.E.

MEMORANDUM BY NICHOLS, J.:                    **FILED JUNE 18, 2026**

Appellant Malik Wilford-Williams appeals from the judgment of sentence imposed after he was convicted following a jury trial of indecent assault.[1]  On appeal, Appellant claims that the motions court erred by denying his motion to exclude video evidence from trial.  After review, we affirm.

The trial court set forth the facts of the case as follows:

On September 14, 2020, [complainant M.J. (the Victim)] was in her apartment building located near Temple University in Philadelphia.  She went downstairs to use the vending machines in the lobby.  When she got on the elevator to return to her apartment, Appellant got on with her.  [The Victim] stated that she had seen Appellant in the building before but had not spoken to him.  Appellant was wearing a mask, [the Victim] was not.  [The Victim] and Appellant exchanged greetings in the elevator.  When M.J. got off the elevator, Appellant followed.  [The Victim] testified that she thought this was strange because Appellant did not live on her floor.  She asked Appellant if he lived on that floor, and he said no. Appellant followed [the Victim] down the hallway and

_____

[1] 18 Pa.C.S. § 3126(a)(1).

asked if he could come to her room. She said no because she had class, and that maybe he could come on another day. Appellant "wouldn't let up" even though [the Victim] kept saying "no." Appellant touched [the Victim's] buttocks. [The Victim] stopped in front of an apartment that was not hers so that Appellant would not know where she lived and asked him to leave. [The Victim] told Appellant to stop three times. Appellant asked to see the tattoo on [the Victim's] thigh, and then put his hand under [the Victim's] shirtdress. She pushed his hand away because it was close to her vaginal area. [The Victim] did not offer to show Appellant her tattoo, nor did she make any movement to intentionally show him her tattoo. [The Victim] testified that Appellant made sounds while he was touching her and "it was clear that he was aroused." [The Victim] did not give Appellant consent to touch her. Shortly after the incident, [the Victim] called her friend Sarah. Sarah arrived at [the Victim's] apartment 15 or 20 minutes after the phone call and contacted the building manager, who called the Temple University Police. After the Temple officers arrived, [the Victim] was taken to the Special Victims Unit ("SVU") of the Philadelphia Police, where she gave a statement to Officer Viera. During her testimony, [the Victim] viewed security camera footage. She confirmed that the video was taken in her apartment building on the date in question, that she and Appellant were visible on the video, and that the video showed Appellant touching her buttocks but did not show the interaction where he reached under her dress.

Sarah Palmatory, [the Victim's] friend, testified that she and [the Victim] have known each other since 2017 and are best friends. On September 14, 2020, she received a phone call from [the Victim]. [The Victim] told Ms. Palmatory that a man had followed her from the elevator, asked to come into her apartment, reached under her dress, and touched her. Ms. Palmatory stated that [the Victim] sounded "muted, very monotone" on the call, which was not normal. When Ms. Palmatory arrived at [the Victim's] apartment, [the Victim] said that she felt violated and did not know what to do. [Ms. Palmatory testified that the Victim] was "speaking . . . in clipped, incomplete sentences . . . as if she couldn't form a complete thought about what she was trying to tell [Ms. Palmatory]." Ms. Palmatory testified that [the Victim] was unsure about what to do, "wasn't sure why it happened," and wondered if she did anything to cause Appellant's behavior Ms. Palmatory asked [the Victim] if she had ever had any social or romantic encounters with Appellant before, and [the Victim] said

no. Ms. Palmatory accompanied [the Victim] to the SVU and gave a statement to Office Viera.

Officer Jose Viera testified that he has been a police officer in Philadelphia for nearly 23 years, and with the SVU for 8 years. Officer Viera was the investigator assigned to the instant case. He interviewed [the Victim] at the SVU at 6:44 pm on September 14, 2020. Officer Viera recalled that [the Victim] "seemed somewhat reserved and nervous" during the interview. Officer Viera also interviewed Ms. Palmatory and Jason Gurney, an employee of the apartment building. Officer Viera showed [the Victim] a six-person photo array, from which [the Victim] positively identified Appellant as her attacker. Officer Viera testified that the SVU received a copy of the security video from the Temple Police and did not receive any other videos. Officer Viera confirmed that the video the SVU received did not show Appellant reaching under [the Victim's] dress.

At the conclusion of witness testimony, the parties stipulated that, if called to testify, Belinda Greer, Brian Payton Kennedy, Darrel Johnson, and Rafiq Williams would have testified that Appellant has a reputation in the community as a peaceful and law-abiding person.

Trial Ct. Opinion, 5/6/25, at 1-3 (some formatting altered and citations omitted).

On October 7, 2022, Appellant made an oral motion *in limine* before the Honorable Robert Coleman seeking to exclude video evidence of the incident. *See* N.T., 10/7/22, at 11-12, 15-23. The motions court held a hearing on the motion and, at the conclusion of the hearing, denied Appellant's motion. *See* *id.* at 28.

The case proceeded to a jury trial before the Honorable Lucretia Clemons on August 29, 2023. At the conclusion of the trial, the jury found Appellant guilty of indecent assault. On December 8, 2023, the trial court sentenced Appellant to six months of probation. Appellant did not file any

post-sentence motions. On January 5, 2024, trial counsel, John Walker, Esquire filed a motion to withdraw as counsel.

Appellant filed a timely *pro se* notice of appeal on January 8, 2024. On January 18, 2024, the trial court issued an order directing Appellant to file a Rule 1925(b) statement. No Rule 1925(b) statement was filed. The trial court filed a statement in lieu of a Rule 1925(a) opinion on April 9, 2024.

On October 4, 2024, this Court ordered the trial court to determine Appellant's counsel status. On November 6, 2024, William A. Love, Esquire entered his appearance on behalf of Appellant. On December 2, 2026, Attorney Love filed an application for remand with this Court seeking a remand to file a Rule 1925(b) statement. This Court granted Appellant's application on January 3, 2025. Appellant filed a Rule 1925(b) statement on January 31, 2025, and the trial court filed a responsive Rule 1925(a) opinion thereafter.

On appeal, Appellant presents the following issue:

> Whether the motions court erred in denying on October 7, 2022 [Appellant's] motion *in limine* to exclude video tape evidence from trial?

Appellant's Brief at 5.

Appellant argues that the motions court erred in denying his motion *in limine* because "this denial allowed the Commonwealth to present a video that showed a portion of the interaction that appeared inculpatory and did not show the remainder of the interaction that exculpated [Appellant]." ***See id.*** at 8-9.

At the motion *in limine* hearing, counsel argued that the video clip the Commonwealth sought to admit should be excluded because the Commonwealth was "cherry-picking" video evidence that was inculpatory and excluding exculpatory video. ***See*** N.T., 10/7/22, at 15-16. Counsel based this argument on the fact that the building where the incident occurred had multiple cameras and that the Victim stated previously that she reviewed video evidence without specifying the number of videos she reviewed. ***See id.*** at 17-19. Counsel stated that he inquired with the building's security team regarding additional video, but the video was no longer available and all the security personnel employed at the time of the incident had been fired within weeks of the incident. ***See id.*** at 17-18. The Commonwealth asserted that the video clip was the only video evidence that it obtained from building security and that it had inquired about other video evidence, but none was provided. ***See id.*** at 16-17. Based upon the length of the incident and multiple cameras in the building, Appellant contends that "common sense dictates that there were more than forty-seconds of video depicting the complaining witness and [Appellant]." ***See*** Appellant's Brief at 14-15 (some formatting altered).

Appellant asserts that the admission of the video evidence violated ***Brady v. Maryland***, 373 U.S. 83 (1963), and the rule of completeness under

Pa.R.E. 106.[2]  ***See id.*** at 9.  Accordingly, Appellant seeks a remand for a new trial.  ***See id.*** at 19.

### Rule of Completeness Claim

This Court has previously set forth the standard of review as follows:

In evaluating the denial or grant of a motion *in limine*, our standard of review is the same as that utilized to analyze an evidentiary challenge.  Pursuant to that standard, the admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.

***Commonwealth v. Pugh***, 101 A.3d 820, 822 (Pa. Super. 2014) (citations omitted and some formatting altered).

Rule 106 states:

If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part--or any other writing or recorded statement--that in fairness ought to be considered at the same time.

Pa.R.E. 106.  A comment to Rule 106 provides that

_____

[2] We note that it is well established that "***Brady*** is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation."  ***Commonwealth v. Lambert***, 765 A.2d 306, 325 (Pa. Super. 2000) (citation omitted).  Further, "there is no general constitutional right to discovery in a criminal case, and ***Brady*** did not create one."  ***See id.*** (citation omitted).  To the extent that Appellant wished to raise a claim under Pa.R.Crim.P. 573, we find it waived as Appellant did not raise such a claim with the trial court.  ***See*** N.T., 10/7/22, at 15 (stating the grounds for the motion *in limine* was Pa.R.E. 106 and ***Brady***); ***see also*** Pa.R.A.P. 302(a) (stating "issues not raised in the trial court are waived" (some formatting altered)).

> The purpose of Pa.R.E. 106 is to give the adverse party an opportunity to correct a misleading impression that may be created by the use of a part of a writing or recorded statement that may be taken out of context. This rule gives the adverse party the opportunity to correct the misleading impression at the time that the evidence is introduced. The trial court has discretion to decide whether other parts, or other writings or recorded statements, ought in fairness to be considered contemporaneously with the proffered part.

Pa.R.E. 106 cmt. Further, this Court has previously stated that "Rule 106 is not an exclusionary rule, but, rather, it merely permits the adverse party to introduce related writings so that the documents originally introduced are not read out of context . . . The rule's primary purpose is to correct misleading . . . evidence." ***Commonwealth v. Bryant***, 57 A.3d 191, 195 (Pa. Super. 2012) (citation omitted and some formatting altered).

As to Appellant's rule of completeness argument, we note that Appellant's reliance on Rule 106 as a theory for the exclusion of evidence is misplaced, as Rule 106 does not function as an exclusionary rule. ***See Bryant***, 57 A.3d at 195. As stated above, Rule 106 simply allows a party to admit additional portions of evidence in the interest of fairness when the opposing party presents other portions out of context. ***See id.*** Here, the trial court did not prevent Appellant from admitting any evidence under Rule 106. Accordingly, we conclude that the trial court did not err in failing to exclude the Commonwealth's video clip under Rule 106. ***See id.***; ***see also*** Pa.R.E. 106; ***Pugh***, 101 A.3d at 822.

### ***Brady* Claim**

Pursuant to ***Brady***, the Commonwealth is required to turn over favorable evidence to the defendant when it is material to either the guilt or sentencing phase. ***Commonwealth v. King***, 271 A.3d 437, 445 (Pa. Super. 2021) (citing ***Brady***, 373 U.S. at 87).

To establish a ***Brady*** violation, the defendant has the burden of proving: "(1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued." ***Id.*** at 442 n.4 (citation omitted); ***see also Commonwealth v. Murray***, 174 A.3d 1147, 1152 (Pa. Super. 2017) (explaining that defendant bears the burden of proving these three factors).

Additionally, "a prosecutor's disclosure obligation [under ***Brady***] includes evidence known to or readily ascertainable to the government actors involved in the defendant's prosecution." ***Commonwealth v. Conforti***, 303 A.3d 715, 727 (Pa. 2023). Finally, it is well established that "the Commonwealth cannot violate ***Brady*** by suppressing evidence that does not exist." ***Commonwealth v. Smith***, 17 A.3d 873, 890 (Pa. 2011) (some formatting altered).

After our review, we conclude that Appellant has not satisfied his burden of proving the Commonwealth violated ***Brady***. ***See Murray***, 174 A.3d at 1152. At the motion *in limine* hearing, Officer Jose Viera testified that he was never made aware of any video evidence other than the short video clip the

Commonwealth sought to admit. *See* N.T., 10/7/22, at 25. The Victim also testified that she only reviewed one video clip, which was "roughly maybe 30 seconds." *See id.* at 28 (some formatting altered). Further, both Appellant and the Commonwealth agreed that any additional video the building security team possessed was unavailable when they reached out to obtain it. *See id.* at 16-18. While Appellant asserts that "common sense dictates that there were more than forty-seconds of video," he has not shown that the additional video was readily ascertainable by the Commonwealth or that it exists. *See* Appellant's Brief at 14 (some formatting altered); *see also Smith*, 17 A.3d at 890; *Conforti*, 303 A.3d at 727.

Accordingly, Appellant merely speculates that there is additional exculpatory video evidence. He has not proven the existence of any favorable evidence let alone that the Commonwealth suppressed it. *See King*, 271 A.3d at 442 n.4; *Conforti*, 303 A.3d at 727; *Smith*, 17 A.3d at 890. Therefore, Appellant has failed to satisfy his burden of proving there was a *Brady* violation. *Murray*, 174 A.3d at 1152. For these reasons, no relief is due.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/18/2026