J-S20001-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER MICHAEL RODLAND, | : | |
| | : | |
| Appellant | : | No. 1087 WDA 2017 |

Appeal from the Judgment of Sentence April 19, 2001
in the Court of Common Pleas of Blair County
Criminal Division at No(s): CP-07-CR-0000890-1999,
CP-07-CR-0000891-1999, CP-07-CR-0000892-1999,
CP-07-CR-0000893-1999, CP-07-CR-0000894-1999,
CP-07-CR-0000896-1999, CP-07-CR-0000898-1999,
CP-07-CR-0000899-1999, CP-07-CR-0000900-1999,
CP-07-CR-0000904-1999, CP-07-CR-0000905-1999,
CP-07-CR-0000907-1999, CP-07-CR-0000908-1999,
CP-07-CR-0000909-1999, CP-07-CR-0000910-1999,
CP-07-CR-0000912-1999, CP-07-CR-0000913-1999,
CP-07-CR-0001014-2000, CP-07-CR-0001107-1999,
CP-07-CR-0001108-1999, CP-07-CR-0001112-19

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER MICHAEL RODLAND, | : | |
| | : | |
| Appellant | : | No. 1088 WDA 2017 |

Appeal from the Judgment of Sentence January 19, 2001
in the Court of Common Pleas of Blair County
Criminal Division at No(s): CP-07-CR-0000895-1999,
CP-07-CR-0000897-1999, CP-07-CR-0000903-1999,
CP-07-CR-0000911-1999

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER MICHAEL RODLAND, | : | |
| | : | |
| Appellant | : | No. 1089 WDA 2017 |

Appeal from the PCRA Order June 13, 2017
in the Court of Common Pleas of Blair County
Criminal Division at No(s): CP-07-CR-0000890-1999,
CP-07-CR-0000891-1999, CP-07-CR-0000892-1999,
CP-07-CR-0000893-1999, CP-07-CR-0000894-1999,
CP-07-CR-0000895-1999, CP-07-CR-0000896-1999,
CP-07-CR-0000898-1999, CP-07-CR-0000899-1999,
CP-07-CR-0000900-1999, CP-07-CR-0000904-1999,
CP-07-CR-0000905-1999, CP-07-CR-0000907-1999,
CP-07-CR-0000908-1999, CP-07-CR-0000909-1999,
CP-07-CR-0000910-1999, CP-07-CR-0000911-1999,
CP-07-CR-0000912-1999, CP-07-CR-0000913-1999,
CP-07-CR-0001014-2000, CP-07-CR-0001107-1999,
CP-07-CR-0001108-1999, CP-07-CR-0001112-1999

BEFORE: GANTMAN, P.J.E., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    **FILED: MAY 27, 2021**

Christopher Rodland ("Rodland") appeals, *nunc pro tunc*, from the

judgments of sentence entered following his convictions of arson[1] and related

---

[1] ***See generally*** 18 Pa.C.S.A. § 3301.

- 2 -

crimes. Rodland additionally appeals from the Order of the Post Conviction Relief Act[2] ("PCRA") court, which reinstated his direct appeal rights, *nunc pro tunc*, but denied relief on several of Rodland's other claims, and declined to order resentencing as to all counts. As to Rodland's judgments of sentence, and, as directed by our Supreme Court on remand, after reconsideration based upon our Supreme Court's decision in **Commonwealth v. Cochran**, 244 A.3d 413 (Pa. 2021), we affirm in part, and vacate and remand for resentencing in part.

In **Commonwealth v. Rodland**, 4 A.3d 687 (Pa. Super. 2010) (unpublished memorandum), **appeal denied**, 13 A.3d 477 (Pa. 2010), this Court briefly summarized some of the protracted history underlying the instant appeal as follows:

> [T]his case has a convoluted procedural history…. [T]here were thirty or more criminal complaints filed against [Rodland]. He pled guilty to some charges and underwent two jury trials— one involving various arson charges and another involving a second set of arson charges. After those trials, he was convicted and sentenced to extended periods of incarceration. [Rodland] then attempted to proceed on direct appeal[,] but his appeals were dismissed, apparently because his counsel failed to file briefs. [Rodland] filed numerous [P]etitions under the [PCRA], perhaps eleven of them, as well as collateral appeals from some of the denials of those [P]etitions. Eventually, this case came to the point where [Rodland's] direct appeal rights were reinstated, [and he filed *nunc pro tunc* appeals from his judgments of sentence.]

_____

[2] 42 Pa.C.S.A. §§ 9541-9546.

*Id.* (unpublished memorandum at 1-2).

On direct appeal, *nunc pro tunc*, this Court found all but one issue waived, based upon defects in Rodland's appellate brief. *Id.* (unpublished memorandum at 3). This Court found no merit to Rodland's claim that his inculpatory statements to Altoona Police Detective Roger White ("Detective White") should have been suppressed, and affirmed Rodland's judgments of sentence, after which the Pennsylvania Supreme Court denied allowance of appeal. *Id.* (unpublished memorandum at 3-5).

On February 23, 2011, Rodland filed a Petition for relief pursuant to the PCRA.[3] Rodland filed a Supplemental Petition on July 20, 2011. The PCRA court appointed counsel, who filed an Amended PCRA Petition. New counsel was appointed in April 2012, who filed Supplemental PCRA Petitions in 2013. On June 13, 2017, following a hearing, the PCRA court entered an Order reinstating Rodland's direct appeal rights, *nunc pro tunc*, and vacating one of Rodland's sentences. Thereafter, Rodland filed direct appeals of his judgments of sentence, and an appeal of the PCRA court's Order.[4]

---

[3] Rodland additionally sought bail pending his appeal, which the PCRA court denied. On appeal, this Court affirmed the Order of the PCRA court, after which the Pennsylvania Supreme Court denied allowance of appeal. *See Commonwealth v. Rodland*, 64 A.3d 275 (Pa. Super. 2013), *appeal denied*, 2018 Pa. LEXIS 2436.

[4] On June 1, 2018, our Supreme Court held, in a decision to be applied prospectively only, that "when a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed. The

On appeal, this Court affirmed the Order of the PCRA court, vacated the judgments of sentence at CR 890, 894, 907, 910 and 1014 of 1999, and affirmed all other judgments of sentence. *See Commonwealth v. Rodland*, 220 A.3d 624 (Pa. Super. 2019) (unpublished memorandum at 29-30). On allowance of appeal, our Supreme Court vacated and remanded for reconsideration of our decision, in light of its Opinion in *Cochran*. *See Commonwealth v. Rodland*, 2021 Pa. LEXIS 1386.

Rodland presents the following claims for our review:

1. Whether … the [PCRA] court should have set [] Rodland's case for resentencing after vacating the sentence of one of the counts he was convicted on[], as it upset the overall sentencing scheme?

2. Whether [] Rodland's guilty pleas were unlawfully induced by the promise of Detective White to speak favorably at his sentencing, and whether the Commonwealth violated a plea bargain when Detective White failed to speak of [] Rodland's cooperation at sentencing?

3. Whether the sentencing court erred by leaving open the amount of restitution after the date [] Rodland was sentenced?

4. Whether the trial court erred by permitting evidence of other bad acts/uncharged conduct to be put [before] the jury at [] Rodland's trial on December 5 & 6, 2000[?]

5. Whether the trial court erred by allowing paper copies of [] Rodland's alleged confession to go back with the jury during deliberations?

6. Whether [] Rodland's speedy trial rights were violated?

---

failure to do so will result in quashal of the appeal." *Commonwealth v. Walker*, 185 A.3d 969, 977 (Pa. 2018). Rodland filed the instant appeals prior to the filing of our Supreme Court's decision in *Walker*.

7. Whether the sentencing court erred by improperly considering Rodland's expunged juvenile record and a threatening letter received by a prosecutor alleged to have come from [] Rodland, but was never properly investigated?

8. Whether the Commonwealth withheld evidence favorable to [] Rodland, thereby rendering [] Rodland's guilty plea unknowing and involuntary?

9. Whether [] Rodland's trial counsel should have been held ineffective for failing to present evidence of [Rodland's] mental health at sentencing?

Brief for Appellant at 5-7 (issues renumbered).

Rodland first argues that the PCRA court erred when it vacated one, but not all, of his sentences, to allow resentencing on all charges. *Id.* at 15. According to Rodland, the trial court previously had *nolle prossed* Count I at Criminal Information Number CR 909 of 1999. *Id.* However, at the later guilty plea colloquy, Rodland mistakenly entered a guilty plea to Count I, and the trial court sentenced Rodland on that Count. *Id.* at 16. Rodland points out that the PCRA court correctly recognized this mistake, and properly vacated Rodland's sentence at Count I. *Id.* (citing PCRA Court Opinion, 6/13/17, at 15). However, Rodland challenges the PCRA court's failure to vacate *all* of his sentences, and remand for resentencing on the remaining charges. *Id.* at 17. Rodland argues that, because the PCRA court's Order upset his sentencing scheme, all of his sentences should have been vacated, and the case remanded for resentencing on all charges. *Id.* Rodland cites *Commonwealth v. Bartrug*, 732 A.2d 1287 (Pa. Super. 1999), in support.

In reviewing an illegal sentence claim, "[t]he issue … is a question of law and, as such, our scope of review is plenary and our standard of review is *de novo.*" **Commonwealth v. Williams,** 920 A.2d 887, 889 (Pa. Super. 2007) (citation omitted).

In **Bartrug**, this Court held that "when an illegal sentence has been imposed, the sentence must be corrected. Likewise, … if a trial court errs in its sentence on one count in a multi-count case, then all sentences for all counts will be vacated, so that the court can restructure its entire sentencing scheme."[5] **Bartrug**, 732 A.2d at 1289 (citations omitted). However, where vacating one sentence does not upset the trial court's sentencing scheme, there is no need to remand for resentencing. **Commonwealth v. Thur**, 906 A.2d 552, 569 (Pa. Super. 2006); **see also Commonwealth v. Robinson**, 817 A.2d 1153, 1163 n.14 (Pa. Super. 2003) (declining to remand for resentencing, where the reversal of one sentence did not "upset the court's sentencing scheme[,] as the sentence we reverse here had been ordered to run concurrent to the sentence imposed on the [other] conviction.").

---

[5] **See Commonwealth v. Goldhammer**, 517 A.2d 1280, 1283 (Pa. 1980) (recognizing that, "when a defendant challenges one of several interdependent sentences, he, in effect, challenges the entire sentencing plan.").

Our review discloses that, at Count I, docketed at CR 909 of 1999, Rodland was charged with arson-endangering persons,[6] as to property located at 700 E. 2nd Avenue in Altoona, Pennsylvania. **See** Criminal Information, 6/21/99. Our review also discloses that, at Count II, Rodland was charged with arson-endangering property,[7] for property located at 701 1st Avenue in Altoona. **See id.** By an Order entered on November 14, 2000, the trial court *nolle prossed* Count I. Trial Court Order, 11/14/00. Notwithstanding, Count I improperly was included in Rodland's guilty plea colloquy, and at sentencing. At Count I, the trial court sentenced Rodland to 3 to 6 years in prison. This sentence was imposed consecutive to Rodland's other sentences at other docket numbers. At Count II, the trial court imposed a prison term of 1-2 years, *to run concurrent with Rodland's sentence at Count I*. Contrary to Rodland's assertions, the sentence imposed at Count II was imposed consecutive to all charges, except those imposed at Count I. Under these circumstances, we conclude that, by vacating the sentence at Count I, the PCRA court did not upset the trial court's sentencing scheme. **See Robinson**, 817 A.2d at 1163 n.14. Therefore, we discern no error in the PCRA court's failure to require resentencing on all of Rodland's convictions.

---

[6] **See** 18 Pa.C.S.A. § 3301(a)(i).

[7] **See** 18 Pa.C.S.A. § 3301(a)(ii).

In his second claim, Rodland argues that his guilty pleas were unlawfully induced by a promise, made by Detective White, to speak favorably of Rodland's cooperation at sentencing. Brief for Appellant at 19. Rodland argues that he waived his right to a jury trial and entered a guilty plea based upon Detective White's promise to make Rodland's cooperation known to the sentencing court. *Id.* at 22.

"In determining whether a guilty plea was entered knowingly and voluntarily, … a court is free to consider the totality of the circumstances surrounding the plea." *Commonwealth v. Flanagan*, 854 A.2d 489, 513 (Pa. 2004) (citations and internal quotation marks omitted). "Our law presumes that a defendant who enters a guilty plea was aware of what he was doing. He bears the burden of proving otherwise." *Commonwealth v. Yeomans*, 24 A.3d 1044, 1047 (Pa. Super. 2011) (citation omitted). "A person who elects to plead guilty is bound by the statements he makes in open court while under oath and may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy." *Id.* (citation omitted).

Our review discloses that Rodland's present claim contradicts the statements he made in his written and oral guilty plea colloquies. In his written guilty plea colloquy, Rodland was asked whether any promises or deals had been offered in exchange for his guilty plea. *See* Written Plea Colloquy, 2/26/01, at ¶ 35. Rodland stated that he was promised a 5 to 10-year prison

term, consecutive to his current sentence, but made no mention of a promise made by Detective White. *See id.* at ¶¶ 35-36. During the oral guilty plea colloquy, the trial court inquired of Rodland whether any promises had been made regarding his pleas, to which Rodland responded in the negative. N.T. (Plea Colloquy), 4/2/01, at 8-9. As Rodland is bound by these statements, we cannot grant him relief on his claim.[8]

In his third claim, Rodland argues that the trial court, at CR 890, 894, 907, 910 and 1014 of 1999, improperly failed to set the amount of restitution. Brief for Appellant at 24. Rodland asserts that the trial court allowed the District Attorney 30 days within which to provide documentation, but the award was not entered within the 30-day time period. *Id.* Rodland asserts

---

[8] Rodland's reliance upon the Pennsylvania Supreme Court's decision in ***Commonwealth v. Gibbs***, 553 A.2d 409 (Pa. 1989), and this Court's decision in ***Commonwealth v. Morgan***, 606 A.2d 467 (Pa. Super. 1992), is misplaced. In ***Gibbs,*** the Pennsylvania Supreme Court concluded that the defendant had been impermissibly induced to make a confession after the defendant stated, "Maybe I should talk to a lawyer." ***Gibbs***, 553 A.2d at 409. The police officer had thereafter responded, "I really don't know what good it would do. The only thing is I would tell the District Attorney you cooperated for whatever good that would be, but I would have no idea whether it would help your case or not." ***Id.*** In ***Morgan***, this Court extended the rationale in ***Gibbs*** to include situations in which the promise of favorable treatment by the district attorney is used to induce a defendant to waive his right against self-incrimination. ***Morgan***, 606 A.2d at 469. These cases have not been extended to apply where, as here, a defendant contradicts his statements made during the guilty plea colloquy.

that the judgments of sentence that left open the amount of restitution are

illegal.  ***Id.***

As this Court has explained,

a challenge to a court's authority to impose restitution is generally considered to be a challenge to the legality of the sentence.  A challenge to the legality of a sentence ... may be entertained as long as the reviewing court has jurisdiction.  It is also well-established that [i]f no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction.  An illegal sentence must be vacated.  Issues relating to the legality of a sentence are questions of law[; as a result, o]ur standard of review over such questions is *de novo* and our scope of review is plenary.

***Commonwealth v. Rivera***, 95 A.3d 913, 915-16 (Pa. Super. 2014) (internal

quotation marks and citations omitted).

Restitution, as a part of a defendant's sentence, is authorized by 18

Pa.C.S.A. § 1106.  Section 1106 provides, in relevant part, as follows:

§ **1106. Restitution for injuries to person or property**

**(a) General rule**.—Upon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime, … the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.

* * *

**(c) Mandatory restitution. —**

* * *

**(2)** At the time of sentencing the court shall specify the amount and method of restitution. In determining the amount and method of restitution, the court:

**(i)** Shall consider the extent of injury suffered by the victim, the victim's request for restitution … and such other matters as it deems appropriate.

**(ii)** May order restitution in a lump sum, by monthly installments or according to such other schedule as it deems just.

\* \* \*

**(4)**

**(i)** It shall be the responsibility of the district attorneys of the respective counties to make a recommendation to the court at or prior to the time of sentencing as to the amount of restitution to be ordered. This recommendation shall be based upon information solicited by the district attorney and received from the victim.

**(ii)** Where the district attorney has solicited information from the victims as provided in subparagraph (i) and has received no response, the district attorney shall, based on other available information, make a recommendation to the court for restitution.

18 Pa.C.S.A. § 1106.

Thus, "[t]he plain text of the statute requires the trial court to specify the amount of restitution at the time of the original sentencing[,] as well as a method of payment." *Commonwealth v. Gentry*, 101 A.3d 813, 818 (Pa. Super. 2014). "This provides the defendant with certainty as to his sentence, and at the same time allows for subsequent modification, if necessary." *Commonwealth v. Dinoia*, 801 A.2d 1254, 1257 (Pa. Super. 2002). *Cf. Commonwealth v. Mariani*, 869 A.2d 484, 486 (Pa. Super. 2005) (deeming a restitution order illegal where the trial court, at the time of sentencing,

declined to set any amount of restitution, and instead scheduled a subsequent hearing on the restitution issue).

Recently, our Supreme Court entered its decision in **Cochran**, and we have been directed to reconsider this issue in light of its decision. **See Commonwealth v. Rodland**¸ 2021 Pa. LEXIS 1386. In **Cochran**, the defendant pled guilty to charges resulting from the damages he inflicted, while intoxicated, on a vacation home owned by his grandparents. **Cochran**, 244 A.3d at 415. However, the defendant "disputed whether he was responsible for that total amount [of restitution] the Commonwealth requested, because some of the destroyed or damaged property had belonged to him." **Id.** The defendant requested that "a hearing be scheduled to determine the proper restitution amount. The trial court granted the request and proceeded with the guilty plea colloquy." **Id.** "Following the entry of the plea, the trial court proceeded to the non-restitution aspects of sentencing." **Id.** The trial court imposed prison terms and scheduled a restitution hearing for two months later. **Id.** The defendant filed a formal motion for a restitution hearing. **Id.**

When the first restitution hearing could not be completed in the time allotted, the matter was continued to another date. **Id.** at 416. On both dates, the defendant objected to the jurisdiction of the court, as more than 30 days had passed since sentencing. **Id.** The trial court denied the motion, and imposed restitution. **Id.** At the second hearing, the defendant objected

to the trial court's jurisdiction on the grounds that his sentence had become final 30 days after the initial imposition of incarceration. *Id.* The trial court disagreed, imposed an order of restitution, and the defendant appealed. *Id.*

Ultimately, our Supreme Court held that the trial court's order of restitution was a legal sentence, because the defendant had requested the restitution hearing:

> The circumstances of this particular case are unique in that [the defendant] at the time of [the initial] sentencing agreed to proceed with sentencing **but disputed the restitution amount and requested an additional hearing**. There is nothing in the Rules of Criminal Procedure or the Judicial Code that precludes a sentencing court from conducting a sentencing proceeding over multiple days as the needs of the parties and the court's schedule may necessitate. Accordingly, the trial court announced the incarceration portion of the sentence with other conditions in an order dated June 29, 2017. In response to [the defendant's] request, the order included setting a date for a further hearing on August 28, 2017 to address certain factual issues about the ownership of the damaged property included in the Commonwealth's valuation of restitution. On this record, it is apparent the sentencing court proceeded with a segmented or bifurcated sentencing hearing, resulting in a complete and final order only on September 15, 2017. Viewed in this manner, the sentence is compliant with Section 1106 and the issues raised by [the defendant] and addressed by the Superior Court [are] moot.
>
> … Because the final complete sentencing order was entered on September 15, 2017, we conclude [the defendant] had no basis to challenge the sentencing court's jurisdiction under Section 1106 (c)(2).

*Id.* at 421 (emphasis added).

Here, unlike in *Cochran*, the trial court directed that the Commonwealth submit documentation for its claim of restitution to the trial court within 30 days. *See* N.T. (Sentencing), 4/23/01, at 11, 13, 17, 21, 29. No hearing was

scheduled and no motion challenging the amount of restitution was pending. Further, the record does not reflect a clear intention by the trial court to bifurcate the sentencing, as the Supreme Court had specifically observed in **Cochran**. We therefore conclude that **Cochran** is distinguishable, and not applicable to the present case.

In the instant case, our review of the record discloses that the trial court considered the issue of restitution separately, as to the charges at each docket number. For example, at docket number CR 1112 of 1999, the trial court required Rodland to pay restitution to Lisa Smithmyer in the amount of $250.00, and to Millvale Mutual Insurance Company in the amount of $2,417.97. N.T. (Sentencing), 4/23/01, at 13. At docket number CR 908 of 1999, the trial court directed that restitution of $2,175.00 be paid to David Gormley, related to the charges at that docket number. **Id.** at 23. By contrast, at docket numbers CR 892, 893, 891, 898, 905, 906, 909, 912, 913 and 1108 of 1999, the trial court, at each number, expressly stated that no claim for restitution was made regarding the charges at that number. **Id.** at 3, 4, 5, 9, 12, 15, 25, 26, 28.

However, at docket numbers CR 890, 894, 907, 910 and 1014 of 1999, the trial court left open the amount of restitution. **See** N.T. (Sentencing), 4/23/01, at 11, 13, 17, 21, 29. Rodland is correct that, in this case, the open restitution Orders constituted illegal sentences. Because the sentences imposed at each of these docket numbers were integrated sentences, intended

to consist of both confinement and monetary elements, and because these elements were not imposed contemporaneously, the illegality of one part invalidates the whole sentence at those docket numbers. *See Mariani*, 869 A.2d at 487 (stating that because the sentence in that case "was an integrated one intended from the outset to consist of both confinement and monetary elements, and because both were not imposed contemporaneously, the illegality of one part invalidates the whole."). We therefore vacate the sentences imposed at docket numbers CR 890, 894, 907, 910 and 1014 of 1999, which included open orders of restitution, and remand for resentencing at those docket numbers.[9]

In his fourth claim, Rodland argues that the trial court improperly allowed evidence of other bad acts/uncharged conduct to be considered by the jury at his trial on December 5 and 6, 2000. Brief for Appellant at 25. According to Rodland, evidence of "other crimes and uncharged bad acts was presented to the jury in [his] trial for offenses charged [at docket numbers] [CR] 895, 897, 903 and 911 of 1999." *Id.* at 26. In particular, Rodland states that the trial court improperly admitted evidence concerning the offenses charged at [CR] 902 [of] 1999, and other "uncharged events." *Id.* at 26-27.

_____

[9] In vacating the open restitution Orders, we do not upset the trial court's sentencing scheme at the remaining docket numbers. The trial court separately considered restitution at each docket number, and provided an integrated sentence as to the charges listed under each docket number. We therefore leave intact Rodland's remaining sentences.

Rodland states that this ruling "went against the purpose of the [O]rder severing the cases, entered on October 4, 2000[,] in [CR] 890 [of] 1999 [and] 902 [of] 1999." *Id.* at 27. Rodland acknowledges that no limiting instruction was requested or issued. *Id.* at 27-28.

> The admission of evidence
>
> is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

*Commonwealth v. Tyson*, 119 A.3d 353, 357-58 (Pa. Super. 2015) (*en banc*).

"All relevant evidence is admissible, except as otherwise provided by law." Pa.R.E. 402. "Evidence is relevant if … it has any tendency to make a fact more or less probable than it would be without the evidence … and … the fact is of consequence in determining the action." Pa.R.E. 401(a)-(b). "The court may exclude relevant evidence if its probative value is outweighed by a danger of … unfair prejudice[.]" Pa.R.E. 403. We recognize that "all evidence in a criminal proceeding is prejudicial to the defendant, and … relevant evidence is to be excluded only when it is so prejudicial that it may inflame the jury to make a decision based upon something other than the legal propositions relevant to the case." *Commonwealth v. Colon*, 846 A.2d 747, 753 (Pa. Super. 2004) (citation and internal quotation marks omitted).

- 17 -

Pennsylvania Rule of Evidence 404 generally prohibits the admission of evidence of a crime, wrong or other act to prove a person's character, in order to show that on a particular occasion the person acted in accordance with the character. Pa.R.E. 404(b)(1). However, such evidence may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident, if the probative value of the evidence outweighs its potential for unfair prejudice. Pa.R.E. 404(b)(2).

Our review of the record discloses that prior to the testimony of Detective White, defense counsel challenged the admissibility of portions of Rodland's inculpatory statement to police. N.T., 12/4/00, at 219. At that time, the following discussion ensued:

> [The Commonwealth]: [The statement] says … on this day I [(Rodland)] had my bicycle in town and I was riding around looking for another place I could possibl[y] do for a fire and that would have been sort of out of range where me and [Rodland's friend, Nathan,] had previously done fires, had come up to the area of Garfield Park. That's the only reference—is that the only reference you're talking about?
>
> [Defense Counsel]: That is the one reference.
>
> [The Commonwealth]: That's the only one I'm aware of.
>
> [Defense Counsel]: There's also [a] reference to in the woods, looking to create a brush fire, a reference that since they had to start doing a lot of the fires and also at the time of lighter, and the time lighter—I had used the lighter that we initially used at the other fires, that me and Nathan had used.
>
> [The Commonwealth]: Your Honor … [the] defense is I didn't do it[,] so **it goes to identity and it goes to motive**, it goes to why he was setting these places—this particular house on fire, I was looking to create a fire, a house I could easily do.

- 18 -

…

> I was on my bicycle looking for another place that could possibly
> do and that would have been out of range for where me and
> Nathan had previously done fires.
>
> THE COURT:  On the last statement[,] he was going to a house
> that he had—was going to burn and he saw the carport and went
> in because that was an easier one, so I think your objection is well
> founded from your viewpoint, overruled, because it goes to a
> continuing course of conduct and it also specifically goes to this
> house at … 2414 11th Avenue, and the rest of it is just background,
> I think makes statements as to other fires (inaudible) other fires
> today, it doesn't necessarily mean for other fires (inaudible) brush
> fire, that goes to show what he's doing, not necessarily what he's
> trying, so the objection is overruled….

*Id.* at 221-22 (emphasis added).  During his testimony, Detective White read

Rodland's statement out loud to the jury.  *Id.* at 226-29.  When asked about

his knowledge of the fire at 2414 11th Avenue, in Altoona, Rodland stated the

following:

> On this day, I had my bicycle in town and I was riding around
> looking for another place I could possibly do for a fire, that would
> have been sort of out of range where me and Nathan had
> previously done fires and came up to the area of Garfield park,
> found a house that looked abandoned initially.  I found brush that
> I was going to attempt to do and I found a house that looked
> abandoned, came up the side of the house, lit, I believe it was
> paper that was sitting on the porch, paper or some type of
> insulation, I believe insulation, for modeling paper that was laying
> on the front porch.  I had lit that on fire and then I left the area.

*Id.* at 227.

Upon our review of the testimony, we discern no error or abuse of

discretion by the trial court in admitting testimony regarding Rodland's

statement.  As Rodland had denied setting the fires, this evidence was relevant

to the issues of identity and motive.[10]   Because we discern no abuse of discretion or error, we cannot grant Rodland relief on this claim.[11]

In his fifth claim, Rodland argues that the trial court improperly allowed hard copies of Rodland's confession to be given to the jury during its deliberations.  Brief for Appellant at 28.  According to Rodland, the trial court, off the record, determined that a portion of Rodland's statement could be sent out with the jury during deliberations.  *Id.* at 29.

Our review of the record discloses nothing that would support Rodland's claim.  At trial, the trial court directed that the Rodland's statement would not be given to the jury.  N.T., 12/4/00, at 47-48.  During the Hearing to Supplement the Record, conducted on December 18, 2017, Rodland's trial counsel testified that he did not recall the statement being given to the jury.  N.T., 12/18/17, at 38, 40.  Rodland confirmed that he did not personally observe any documents being sent out with the jury during deliberations.  *Id.* at 15.  The trial judge did not recall the documents being given to the jury, and further stated that he would not have allowed a written confession to be sent out with the jury during deliberations.  *Id.* at 47.  The prosecutor testified

---

[10] Detective White testified that, when asked why Rodland had set the fires, Rodland responded that he "wanted to create a large, basically a situation where the City of Altoona couldn't handle all of the fires in one day."  N.T., 12/5/00, at 89.

[11] Contrary to Rodland's assertion, it is not clear that the admitted evidence referred to fires other than those at issue during the trial.

that the statement was not sent out with the jury during deliberations. *Id.* at 52, 55. Because there is no support for Rodland's claim in the record, we cannot grant him relief.

In his sixth claim, Rodland claims that the trial court erred in not granting his Motion to dismiss the charges based upon a violation of Pa.R.Crim.P. 600 (formerly Rule 1100). Brief for Appellant at 30. According to Rodland, there were over 400 days of non-excludable time, for purposes of the Rule 600 calculation. *Id.* at 36. Specifically, Rodland directs our attention to the following time periods: May 5, 1999, through December 29, 1999; January 31, 2000, through May 2, 2000; from May 8, 2000, through July 7, 2000; and from July 11, 2000, through November 9, 2000. *Id.* at 37-38. Citing *Commonwealth v. Hill*, 736 A.2d 578 (Pa. 1999), Rodland contends that the filing of a pretrial motion does not automatically render him unavailable; "rather, he is unavailable if a delay in the commencement of a trial is cause[d] by the motion." Brief for Appellant at 37. If there is a delay, Rodland argues, the Commonwealth must establish that it exercised due diligence in responding to the motion. *Id.* Rodland asserts that either the time period is excludable, because it caused no delay of the trial, or that the time is attributable to the Commonwealth, as it did not take action to oppose or respond to the Motion. *Id.*

"In evaluating Rule [600] issues, our standard of review of a trial court's decision is whether the trial court abused its discretion." **Hill**, 736 A.2d at 581.

As our Supreme Court has explained,

[b]y the terms of Rule 600, the Commonwealth must bring a defendant to trial within 365 days from the date upon which a written criminal complaint is filed. Pa.R.Crim.P. 600(A)(2)(a). However, the Rule 600 run date may be adjusted pursuant to the computational directives set forth in Subsection (C) of the Rule. For purposes of the Rule 600 computation, "periods of delay at any stage of the proceedings caused by the Commonwealth[,] when the Commonwealth has failed to exercise due diligence[,] shall be included in the computation of the time within which trial must commence." **Id.** 600(C)(1). "Any other periods of delay," including those caused by the defendant, "shall be excluded from the computation." **Id.** When considering a Rule 600 motion, the court must identify each period of delay and attribute it to the responsible party, then adjust the 365-day tally to arrive at the latest date upon which the Commonwealth may try the defendant. Absent a demonstration of due diligence, establishing that the Commonwealth has done "everything reasonable within its power to guarantee that [the] trial begins on time," **Commonwealth v. Matis**, 551 Pa. 220, 710 A.2d 12, 17 (Pa. 1998), the Commonwealth's failure to bring the defendant to trial before the expiration of the Rule 600 time period constitutes grounds for dismissal of the charges with prejudice. **See** Pa.R.Crim.P. 600(D)(1).

**Commonwealth v. Barbour**, 189 A.3d 944, 947 (Pa. 2018).

In **Hill**, our Supreme Court opined that the filing of a pretrial motion does not automatically render a defendant unavailable for trial for purposes of the Rule:

When a defendant is deemed unavailable for trial, the time is excludable from the Rule [600] calculation; however, the mere filing of a pretrial motion by a defendant does not automatically render him unavailable. **Rather, a defendant is only**

- 22 -

> **unavailable for trial if a delay in the commencement of trial is caused by the filing of the pretrial motion.** If a delay is created, in order to establish that the delay is excludable, the Commonwealth must demonstrate, by a preponderance of the evidence, that it exercised due diligence in opposing or responding to the pretrial motion. A delay caused by the Commonwealth's lack of due diligence will not constitute excludable time.

*Hill*, 736 A.2d at 587 (emphasis added).

The Commonwealth filed its Criminal Complaint against Rodland on May 5, 1999. Thus, the mechanical run date for Rule 600 purposes was May 4, 2000. Rodland's trial commenced on December 4, 2000, 214 days beyond the mechanical run date.

Our review discloses that the trial court initially set a trial date of November 20, 1999. On November 19, 1999, Rodland filed a Motion for Change of Counsel. The trial court denied the Motion on November 23, 1999. However, on December 29, 1999, the trial court granted defense counsel's Motion for a continuance until February 17, 2000. Thus, the time periods between November 19, 1999, and November 23, 1999, and from December 29, 1999, to February 17, 2000, a total of 54 days, are excludable for purposes of Rule 600.

On January 31, 2000, Rodland filed Omnibus Pretrial Motions. The trial court scheduled and conducted a hearing on the Omnibus Pretrial Motions on May 2, 2000. We conclude that the time period from February 17, 2000, to May 2, 2000, 75 days, was excludable time, as the delay was caused by the filing of the Omnibus Pretrial Motions, and the trial court's scheduling of a

hearing on those Motions. *See Commonwealth v. McCarthy*, 180 A.3d 368, 376 (Pa. Super. 2018) (recognizing that a delay that resulted from the unavailability of time on trial court's calendar was excludable from the Rule 600 calculation); *Commonwealth v. Frye*, 909 A.2d 853, 859 (Pa. Super. 2006) (stating that, "[i]n conducting the due diligence inquiry, our jurisprudence has excused such delay resulting from court congestion.").

Our review of the record discloses that a continuation of the hearing was scheduled to take place on June 26, 2000, and the Commonwealth moved to continue the hearing until July 7, 2000. We conclude that this time period is not excludable for purposes of Rule 600.

Defense counsel requested a continuance from July 7, 2000, until July 14, 2000. This time period, 8 days, is excludable time.

The trial court concluded its hearing on Rodland's Omnibus Pretrial Motion on July 14, 2000. The trial court received the briefs on Rodland's Motions on September 15, 2000, and entered its Opinion and Order resolving the Motions on October 4, 2000. The time period from July 14, 2000, through October 4, 2000, 83 days, is excludable time caused by judicial scheduling. *See McCarthy*, 180 A.3d at 376.

Factoring in the 220 days of excludable time, the adjusted run date for Rule 600 purposes was December 10, 2000. Because Rodland's trial commenced on December 4, 2000, we discern no abuse of discretion by the trial court in rejecting Rodland's Rule 600 claim.

In his seventh claim, Rodland argues that the trial court improperly considered his expunged juvenile record, and a threatening letter received by the prosecutor, at sentencing. Brief for Appellant at 39. Rodland asserts that the sentencing court had incorrect information that he began committing crimes at age 9, and that the prosecutor had received a threatening letter and intimated that it was from Rodland. *Id.* at 41. Rodland asserts that the court should not have considered such information at sentencing. *Id.*

Rodland's claim that the trial court considered impermissible factors at sentencing is a challenge to the discretionary aspects of sentencing. "The right to appeal a discretionary aspect of sentence is not absolute." *Commonwealth v. Dunphy*, 20 A.3d 1215, 1220 (Pa. Super. 2011). Rather, where an appellant challenges the discretionary aspects of a sentence, we should regard his appeal as a petition for allowance of appeal. *Commonwealth v. W.H.M.*, 932 A.2d 155, 162 (Pa. Super. 2007). Before a challenge to the sentence will be heard on the merits, an appellant, in order to invoke the Court's jurisdiction, must set forth in his brief a separate and concise statement of reasons relied upon in support of his appeal. Pa.R.A.P. 2119(f);[12] *Commonwealth v. Ladamus*, 896 A.2d 592, 595 (Pa. Super.

_____

[12] Rule 2119(f) states the following:

> An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in his brief a concise statement of the reasons relied upon for allowance

2006). Where an appellant fails to comply with Pa.R.A.P. 2119(f), and the Commonwealth objects, the issue is waived for purposes of review. *Commonwealth v. Montgomery*, 861 A.2d 304, 308 (Pa. Super. 2004).

Here, Rodland's brief does not include a Rule 2119(f) statement, and the Commonwealth has objected to its omission. *See* Commonwealth's Brief at 35. Accordingly, Rodland has waived this issue for review. *See Montgomery*, 861 A.2d at 308.

In his eighth claim, Rodland argues that the Commonwealth withheld favorable evidence, *i.e.*, a note stating that one of the fires could have been accidental. Brief for Appellant at 41. Rodland asserts that the Commonwealth withheld this evidence, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and that the omission caused him to tender an unknowing guilty plea. Brief for Appellant at 41. Rodland asserts that on January 20, 2011, he received a "Complaint Summary" regarding the fire at 619 Crawford Avenue.[13] *Id.* at 43. Rodland contends that this Complaint Summary indicated that the fire appeared to be electrical in nature. *Id.* Rodland asserts that, had he known of this report, he would not have tendered a guilty plea. *Id.*

---

of appeal with respect to the discretionary aspects of a sentence. The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of sentence.

Pa.R.A.P. 2119(f).

[13] Rodland pled guilty to arson related to this fire at CR 892 of 1999.

In **Brady**, the United States Supreme Court held that a defendant's due process rights are violated when the prosecution withholds favorable, material evidence from the defense. **Brady**, 373 U.S. at 87. To prove a **Brady** violation, the defendant bears the burden of demonstrating that (1) the prosecutor has suppressed evidence; (2) the evidence, whether exculpatory or impeaching, is helpful to the defendant; and (3) the suppression prejudiced the defendant. **Commonwealth v. Koehler**, 36 A.3d 121, 133 (Pa. 2012) (citation omitted). "Therefore, even if the first two prongs have been established, a defendant must establish that he was prejudiced by the failure to disclose." **Commonwealth v. Pugh**, 101 A.3d 820, 825 (Pa. Super. 2014). "To establish prejudice, the defendant must prove that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." **Id.** (internal quotation marks and citation omitted).

> In its Opinion, the PCRA court addressed this claim as follows:
>
> The record reflects that in the case of the report that "the fire appeared to be electrical in nature," the first on the scene reporting officer only had a cursory look at the initial scene of the crime. This report would likely have had little, if any, effect on the jury in light of further investigation disproving the electrical fire statement….

PCRA Court Opinion, 6/13/17, at 16-17. We agree with and adopt the reasoning of the PCRA court, in rejecting this claim. **See id.** Rodland further fails to establish how knowledge of the initial statement would have altered his decision to plead guilty to setting this fire. Because Rodland has failed to

establish prejudice resulting from the Commonwealth's alleged failure to disclose, we cannot grant him relief on this claim. *See Pugh*, *supra*.

In his ninth and final claim, Rodland argues that the PCRA court erred by determining that his claim of ineffective assistance by his trial counsel at sentencing, John Siford, Esquire ("Attorney Siford"), lacks merit. Brief for Appellant at 44. Rodland asserts that Attorney Siford should have presented evidence regarding his mental health at sentencing. *Id.* at 46. Rodland directs our attention to his testimony, during the PCRA hearing, that he had received treatment through the Blair County Mental Health Agency for behavior problems at school and at home. *Id.* at 47. Rodland also detailed his mental health treatment through the juvenile justice system. *Id.* According to Rodland, there is "no indication that Attorney Siford ever sought any of the providers to discuss [] Rodland's conditions and how they could relate to his offenses." *Id.* at 47-48. Rodland claims that his counsel's inaction deprived the sentencing court of mitigating information and information regarding his potential for rehabilitation. *Id.* at 48.

As our Supreme Court has explained,

[c]ounsel is presumed to be effective, …; to overcome the presumption, [the petitioner] has to satisfy the performance and prejudice test set forth in *Strickland* [*v. Washington*, 466 U.S. 668 (1984)]. In Pennsylvania, we have applied the *Strickland* test by looking to three elements[:] whether[] (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) the defendant has shown that he suffered prejudice as a result of counsel's lapse, *i.e.*, that there is a reasonable probability that the result of the proceeding … would have been different if counsel had objected.

- 28 -

If a claim fails under any necessary element of the **Strickland** test, the court may proceed to that element first.

**Commonwealth v. Bennett**, 57 A.3d 1185, 1195-96 (Pa. 2012) (some citations omitted).

In its Opinion, the PCRA court addressed this claim as follows:

[Rodland] has not provided specific evidence to establish that Attorney Siford's failure to present [Rodland's] mental health history was not a strategy of the attorney. Attorney Siford may have reasonably concluded that introduction of such evidence would be ineffective or even harmful to [Rodland]. [Rodland] has failed to overcome the presumption of effectiveness required by law. Additionally, [Rodland] has failed to establish [that] the information would have changed the outcome of the trial.

PCRA Court Opinion, 6/13/17, at 22-23. We agree with and affirm on the basis of the PCRA court's reasoning, as set forth above. **See id.**

In summary, we vacate the judgments of sentence imposed at docket numbers CR 890, 894, 907, 910 and 1014 of 1999, and remand for resentencing at those docket numbers. In all other respects, we affirm the judgments of sentence and Order of the PCRA Court.

We additionally note that Rodland filed a Motion to Strike certain documents attached as exhibits to the Commonwealth's Brief. Because we address the inclusion of the documents in the certified record, in Rodland's appeals filed at Nos. 1244-1271 WDA 2018, we deny the instant Motion to Strike as moot.

Motion to Strike denied as moot. PCRA Court Order affirmed. Judgments of sentence entered at CR 890, 894, 907, 910 and 1014 of 1999

vacated. Case remanded for resentencing at those docket numbers, consistent with this Memorandum. Remaining judgments of sentence affirmed. Superior Court jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/27/2021