J-S16044-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NAFEES JORDAN | : | |
| | : | |
| Appellant | : | No. 1219 EDA 2020 |

Appeal from the PCRA Order Entered March 6, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005373-2016

BEFORE: BENDER, P.J.E., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED JULY 2, 2021**

Appellant, Nafees Jordan, appeals from the order entered by the Court of Common Pleas of Philadelphia County dismissing without an evidentiary hearing his first petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Herein, he claims that trial counsel rendered ineffective assistance in failing to procure a beneficial witness and inadequately challenging the Commonwealth's alleged non-disclosure of DNA evidence. After careful review, we affirm.

The PCRA court aptly sets forth the procedural history and pertinent facts of the instant case, as follows:

**PROCEDURAL HISTORY**

On July 18, 2017, following a several-day trial, a jury convicted Appellant of Intimidating a Witness/Victim (18 Pa.C.S.A. §

---

[*] Former Justice specially assigned to the Superior Court.

4952(a)(1)) and Possession of an Instrument of Crime (18 Pa.C.S.A. § 907). The jury failed to reach a verdict on charges of Robbery, Burglary, Theft, and Conspiracy. Although initially charged with Aggravated Assault, the Commonwealth elected not to move on that charge at trial. The charge of Violation of the Uniform Firearms Act section 6105 (18 Pa.C.S.A. § 6105(a)(1)) was bifurcated; [the trial court] conducted a bench trial on that charge and found [Appellant] guilty.

On September 25, 2017, following a hearing, [the trial court] sentenced Appellant to consecutive terms of seven (7) to fourteen (14) years' incarceration for Intimidation of a Witness and five (5) to ten (10) years' incarceration for VUFA section 6105, for a total of twelve (12) to twenty-four (24) years. No sentence was imposed for Appellant's conviction of Possession of an Instrument of Crime. [The Pennsylvania Superior Court affirmed judgment of sentence on August 8, 2019.]

On August 26, 2019, Appellant filed a timely pro se PCRA petition. Counsel was appointed and filed a "no merit" letter pursuant to *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1998) on December 27, 2019. Notice to Appellant pursuant to 18 Pa.C.S.A. 907 was sent to Appellant on January 7, 2020. On January 13, 2020, Appellant filed an Objection to *Turner/Finley* No-Merit Letter. On January 17, 2020, Appellant filed a Motion to Dismiss PCRA counsel and requested to "re-file" his PCRA petition. On February 13, 2020, Appellant filed a "Supplemental to Original PCRA Petition."

On March 6, 2020, [the PCRA court] denied Appellant's [*pro se*] objection to the *Turner/Finley* letter as well as the Supplemental Petition to the original PCRA petition and entered an Order dismissing Appellant's PCRA petition. Counsel was permitted to withdraw. The [trial court] determined, however, that Appellant's request to re-file his PCRA petition would be treated as a [timely] second PCRA petition, and it ordered the Commonwealth to respond. Counsel was not appointed, and Appellant was advised that he could proceed *pro se* or with retained counsel.

However, on April 1, 2020, Appellant filed a *pro se* Notice of Appeal of the trial court's Order denying his PCRA petition to the Superior Court. On July 23, 2020, [the PCRA court] issued an Order to file a Concise Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b), and Appellant complied *pro*

*se* on August 20, 2020. On September 1, 2020, [the PCRA court] determined that Appellant should have been afforded counsel in that this is an appeal of his first PCRA petition and requested that the matter be remanded for this purpose. [The Superior Court took no immediate action on this request, instead referring the matter to the merits panel, and directed the PCRA Court] to file a Pa.R.A.P. 1925(a) Opinion.[1]

## FACTS

"The victim is Jarrod Melvin ("Jarrod"), who began classes in 2014 as a freshman at Temple University ("Temple"). He was 18 years' old and resided in off-campus housing at The View apartment building, which is located near Temple's campus in the city and county of Philadelphia, Pennsylvania. When Jarrod first moved into his 12th floor apartment, he had three roommates, Isiah Bounds, David Ortiz, and Brian Robinson. Their apartment had two bedrooms, each containing two beds and a bathroom. There was a "big common area in the middle of the apartment" that contained a stove and other amenities. Jarrod roomed with Isiah Bounds ("Isiah"), with whom he had attended the same high school. Appellant, who Jarrod first met in the Fall of 2014, is Isiah's cousin.

In January or February of 2015, Jarrod arrived home to his shared apartment and encountered Appellant arguing with Isiah about money. Appellant asked Jarrod if he knew "anything about where there's money missing" and if he had "stolen anything from any of the roommates." Unaware of what [Appellant] was talking about, Jarrod said "no." Appellant responded by threating Jarrod by asking him if he knew that (Appellant) could kill him. Jarrod described Appellant as being only a foot away from him and very aggressive. Jarrod believed Appellant was capable of such an act and was "honestly seared that I would be killed."

_____

[1] Upon our review of the record, Appellant was not entitled to appointment of new counsel after the PCRA court had properly permitted appointed counsel to withdraw pursuant to *Finley*. *See Commonwealth v. Maple*, 559 A.2d 953 (Pa. Super. 1989) (finding that the appointment of second counsel after original post-conviction counsel has been permitted to withdraw pursuant to *Finley* is unnecessary and improper).

Appellant then proposed that he, his girlfriend Lashonda Chandler ("Lashonda"), and Lashonda's two young daughters move into Jarrod's apartment and that would settle the argument over the money. Appellant never asked Jarrod for permission to move into the premises and Jarrod was "scared" at the prospect of Appellant's "resolution." Nevertheless, Appellant stayed in the apartment that very night, and about three days later Lashonda moved in with her 3- year-old and 4-year-old daughters.

By the time Appellant and Lashonda moved in, Jarrod's roommate, David Ortiz, had already moved to another apartment. Jarrod's other roommate, Brian Robinson, moved out around a month after Appellant moved in. Jarrod and Isiah thereafter lived in one bedroom while Appellant, Lashonda, and her children lived in the other bedroom. After effectively taking over the apartment, Appellant told Jarrod that he could no longer have his friends come over because it would be "bad for their safety." Again, Jarrod believed the threat and told his friends to stay away.

Appellant and Lashonda lived in Jarrod's apartment from February 2015 until the end of August 2015. During Temple's summer session classes, Isiah moved out because he failed to pay his rent. Jarrod temporarily received two new roommates who stayed in one bedroom while Appellant and Lashonda stayed in the other bedroom. Jarrod, meanwhile, slept on the couch in the apartment's common area. Despite being relegated to the couch in his own apartment, Jarrod believed Appellant's repeated assurances that he and Lashonda were trying to find another apartment. Eventually the lease expired, and management refused to renew it because there were people who weren't on the lease staying in the room. Upon learning he could not renew his lease at The View, Jarrod began searching for other off-campus student housing.

In August 2015, Jarrod moved into "The Edge" apartment building located at 1601 North 15th Street. Jarrod's 4-month lease required rental payments of $725.00 per month, which his mother paid. On Jarrod's first day at the new apartment, Isiah Bounds and two other friends visited him. A few days later, Appellant called Jarrod and asked if he and Lashonda could visit.[fn] Either that day or the next, Appellant visited Jarrod's new apartment with Lashonda and her two kids.

**fn** Jarrod testified that he answered the phone because Appellant "would continually call [Jarod's] phone until he got through to [him]." Appellant would call "[a]s many times as necessary, so it could be up to 20 calls in one day."

Appellant and Lashonda toured Jarrod's new apartment and asked eventually if they could stay for the night. Jarrod acceded because he "didn't feel that [he] could have said no" and didn't think they would actually listen to him anyway. The following morning, Jarrod heard Lashonda arguing with someone on the telephone and was told by Appellant that their new apartment was not going to work out. Appellant and Lashonda therefore again stayed overnight at Jarrod's apartment, this time sleeping in Jarrod's bed while Jarrod slept on the floor. Jarrod believed he would "be met with either violence or threats" if he refused Appellant's request to stay. Appellant and Lashonda soon moved in their possessions. About one month later, Appellant took Jarrod's key cards required for entering the apartment.

Appellant, Lashonda, and her children stayed in Jarrod's second apartment from August 2015 until May 2, 2016. While Appellant and Lashonda slept in his bed during this period, Jarrod slept in the building's community areas and at Isiah Bound's mother's house.

In February 2016, while in the apartment, Appellant showed Jarrod his gun, which Jarrod took to be a threat. Appellant did not verbally threaten Jarrod at that time. Remarkably, in addition to occupying Jarrod's second apartment, Appellant and Lashonda told Jarrod to register for Child Care Information Services (CCIS) and misrepresent that he was a childcare provider for Lashonda's children. Jarrod "was required to write an attendance for [Lashonda's] children saying that [he] was taking care of them five days a week from January of 2016 until about April of 2016." In exchange for registering for CCIS, Jarrod received monthly subsidy checks for around $400.00, which he gave to Appellant. Appellant also directed Jarrod to open a bank account so that CCIS checks could be directly deposited into the account. The account was opened under Jarrod's name but Appellant and Lashonda took

possession of Jarrod's debit card. For the entire duration of the account, Jarrod withdrew only $100.00 for his personal use, when he transferred money into his PayPal account.

Jarrod testified that in February 2016, Jarrod's PayPal transaction caused his bank account to be overdraft. Because of the overdraft, the bank allocated part of the monthly CCIS check to compensate for the balance. Upon discovering the overdraft, followed through with his threats of violence. He punched Jarrod several times and then stuck a gun into his mouth and threatened to kill him. Appellant threatened that if Jarrod told anyone about the incident or went to the police, he would kill Jarrod. Lashonda videotaped the entire incident with her cell phone.

Appellant additionally told Jarrod to register a vehicle under his name and purchase automobile insurance. Lashonda had paid for the vehicle, but neither she nor Appellant possessed a driver's license and thus they could not register the automobile. Appellant told Jarrod that he had to drive the car on certain situations because they did not have their licenses so they would not get in trouble for having a car.

Moreover, while Appellant was not himself employed, he instructed Jarrod to find a job to help Appellant and Lashonda get their own apartment and move out eventually. With the help of Appellant's cousin, Rafi Johnson, Jarrod therefore obtained employment as an attendant for Germantown Taxicab Company. Jarrod did not want the job, missed numerous classes because of the time it consumed, and only took the job because he had been "physically threatened by [Appellant] and also because [he] was somewhat hopeful that they would be able to get their own place and [he] wouldn't have to deal with them ever again."

Finally, while Jarrod was driving the car with Appellant, Jarrod backed into the vehicle behind him, prompting Appellant to punch him several times in the face. On another occasion in April 2016, while Jarrod was driving to his first day of work with Appellant in the passenger seat, Appellant struck Jarrod with an open hand because Jarrod failed to check in with his new employer. Appellant then asked Jarrod "which one of [his] family members did [he] want to die ... and waited for [Jarrod] to answer the question." Although Jarrod intended to spend that very next weekend with his family members, Appellant told him that he couldn't go because his parents would his swollen face from the beating.

A couple of weeks later, on May 1, 2016 Jarrod finally went home. When his parents asked how school was going, Jarrod didn't answer. He had missed his final exams for the second semester and was failing his classes. While trying to think of an excuse for his failing grades, Jarrod broke down and told his parents what occurred over the previous months. Jarrod had not previously told his parents about his situation with Appellant because he was scared for his life and the lives his family members.

Philadelphia Police Officer John Gangloff testified that Jarrod and his parents presented to police headquarters on the evening of May 1, 2016. Jarrod informed Officer Gangloff that Appellant had taken over his apartments, stolen his identity, and threatened to shoot and kill him. Officer Gangloff sent Jarrod to Central Detectives where he was interviewed by Detective Michael Sweeney in the early morning of May 2, 2016. That same morning around 6:00 a.m., Detective Sweeney and fellow officers executed a search warrant for Jarrod's apartment, inside which they found Appellant, Lashonda, and Lashonda's two daughters. The officers' search yielded a loaded handgun, bank statements, "CCIS paperwork," Lashonda's cell phone, car keys, and a "swipe card" for the premises.

Pursuant to another search warrant, Detective Sweeney submitted Lashonda's cell phone to the district attorney's office which recovered and preserved the video from February 2016 that showed Appellant sticking a handgun into Jarrod's mouth and threatening to kill him.

In his defense, Appellant presented the testimony of several of his cousins, including Fatima Johnson, Warren Johnson, Rafi Johnson, and Isiah Bounds. All of these witnesses testified that they were friends with Appellant, socialized with Appellant and Jarrod, had visited Jarrod's apartment(s), and had never observed Jarrod in duress while in the company of Appellant. These witnesses testified that Jarrod and Appellant always behaved "as though they were friends."

Trial Court Opinion, 10/16/20, at 1-6.

Appellant's counseled brief raises the following two ineffective assistance of counsel claims for our consideration:

1. Did the PCRA court err by dismissing the petition without an evidentiary hearing as there was a material issue of fact as to whether or not Tyshawn Williams[′] testimony, if found credible, could have had enough impact on a potential jury verdict to warrant a new trial?

2. Did the PCRA court err by dismissing the petition by reasoning that if there had been presented expert testimony establishing that Appellant's DNA was not on a firearm it would not have been beneficial and would have had no impact on a jury verdict?

Appellant's brief, at 2.

Where a PCRA court has dismissed a petitioner's petition without an evidentiary hearing, as was the case here, we review the PCRA court's decision for an abuse of discretion. *See Commonwealth v. Roney*, 79 A.3d 595, 604 (Pa. 2013), *certiorari denied*, 574 U.S. 829 (2014). Moreover,

the right to an evidentiary hearing on a post-conviction petition is not absolute. It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing.

*Commonwealth v. Wah*, 42 A.3d 335, 338 (Pa. Super. 2012) (citations omitted).

Furthermore, "to obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing."

- 8 -

*Commonwealth v. Johnson*, 139 A.3d 1257, 1273 (Pa. 2016). With these standards in mind, therefore, we address Appellant's two claims premised upon the underlying assertion that trial counsel rendered ineffective assistance.

To prevail on a claim of ineffective assistance of counsel under the PCRA, a petitioner must establish the following three factors: "first[,] the underlying claim has arguable merit; second, that counsel had no reasonable basis for his action or inaction; and third, that [a]ppellant was prejudiced." *Commonwealth v. Charleston*, 94 A.3d 1012, 1020 (Pa. Super. 2014) (citation omitted). "A claim of ineffectiveness may be denied by a showing that the petitioner's evidence fails to meet any of these prongs." *Commonwealth v. Washington*, 927 A.2d 586, 594 (Pa. 2007) (citations omitted).

Furthermore, "counsel is presumed to have rendered effective assistance. [A] court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the *Strickland* [2] test, the court may proceed to that element first." *Commonwealth v. Lesko*, 15 A.3d 345, 374 (Pa. 2011) (citations omitted). "If it is clear that [a]ppellant has not demonstrated that counsel's act or omission adversely affected the outcome of the

---

[2] *Strickland v. Washington*, 466 U.S. 668 (1984) (holding that to establish ineffectiveness, appellant must show the underlying claim has arguable merit, there was no reasonable basis for counsel's actions or failure to act, and appellant was prejudiced).

proceedings, the claim may be dismissed on that basis alone and the court need not first determine whether the first and second prongs have been met." ***Commonwealth v. Albrecht***, 720 A.2d 693, 701 (Pa. 1998). Where, as here, the PCRA court judge also served as the trial court judge, "multiple courts have recognized [the judge] is in the best position to review claims related to trial counsel's error in the first instance as that is the court that observed first hand counsel's allegedly deficient performance." ***Commonwealth v. Grant***, 813 A.2d 726, 737 (Pa. 2002).

Appellant posits that trial counsel ineffectively failed to call as a witness Tyshawn Williams, whose affidavit stated he would have testified that the firearm recovered from a closed black book bag in May 2016 belonged not to Appellant but to him, that he had loaned it to the victim, Jarrod Melvin, and that Melvin pulled it on Appellant during the fight between the two. According to Williams, Appellant disarmed Melvin in the moment but eventually returned the gun to Melvin after the fight. Such testimony, Appellant maintains, would have cast reasonable doubt on the prosecution's theory at trial that Appellant knew of and used that gun depicted in the video shown to the finder of fact. Appellant's brief at 16-17.

> When raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements [ ] by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

> Prejudice in this respect requires the petitioner to "show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." Therefore, the petitioner's burden is to show that testimony provided by the uncalled witnesses "would have been helpful to the defense."

*Commonwealth v. Selenski*, 228 A.3d 8, 16 (Pa. Super. 2020) (citations omitted).

Appellant fails to explain how Mr. Williams' proposed testimony would have had any effect on the outcome of his trial. Specifically, the charges against Appellant were supported by the admission of the video depicting Appellant placing a handgun in Jarrod Melvin's mouth while in the act of threatening him. Whether Appellant owned the gun, knew of it beforehand, or had planned to use it at the time of this act is not an element of the Persons Not to Possess crime with which he was charged and convicted; the video showing his possession of the firearm satisfied the elements of the offense.

Moreover, Williams' affidavit is of questionable credibility to the extent it described Appellant as having acted in his own self-defense by confiscating the firearm from the aggressor Melvin before peaceably returning the firearm to Melvin, the very man who had just threatened him with the gun. Therefore, when viewed in light of both the video and common sense, Williams' testimony displays patent shortcomings that simply do not allow for the conclusion that the absence of his testimony prejudiced Appellant. Accordingly, the first issue fails.

Appellant's second issue, in which he argues trial counsel failed to pursue adequately a **Brady**[3] inquiry into whether authorities destroyed or failed to disclose material evidence such as the bag in which the gun was stored, and results from a DNA swab of the bag, ultimately suffers from the same inability to demonstrate prejudice under the governing test. In **Brady**, the United States Supreme Court held that a defendant's due process rights are violated when the prosecution withholds favorable, material evidence from the defense. **Brady**, 373 U.S. at 87.

To prove a **Brady** violation, the defendant bears the burden of demonstrating that (1) the prosecutor has suppressed evidence; (2) the evidence, whether exculpatory or impeaching, is helpful to the defendant; and (3) the suppression prejudiced the defendant. **Commonwealth v. Koehler**, 36 A.3d 121, 133 (Pa. 2012) (citation omitted). "Therefore, even if the first two prongs have been established, a defendant must establish that he was prejudiced by the failure to disclose." **Commonwealth v. Pugh**, 101 A.3d 820, 825 (Pa. Super. 2014). "To establish prejudice, the defendant must prove that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." **Id.** (internal quotation marks and citation omitted).

At trial, defense counsel conducted extensive cross-examination of Detective Michael Sweeney, who executed the search warrant of Jarrod's

_____

[3] **Brady v. Maryland**, 373 U.S. 83 (1963).

apartment where he encountered Appellant and recovered the loaded handgun and other personal possessions. N.T., 7/13/17, at 155-175. According to Detective Sweeney, the handgun was recovered from a black bag, but the bag itself was not recovered for evidentiary purposes. Detective Sweeney also testified that Appellant was swabbed for DNA testing, but he maintained the sample was not analyzed. N.T. at 163.

Appellant's theory of ineffective assistance of counsel on this claim is directed at trial counsel's inability to obtain disclosure of DNA evidence under **Brady** that would have, at best, established whether or not he handled the bag in which a loaded handgun was recovered. Had the DNA results from the bag excluded him, Appellant contends, such evidence would tend to show he did not possess the gun stored inside.

Appellant's burden under the **Brady** test, however, is to establish, *inter alia*, a reasonable probability that the result of his trial would have been different had such evidence been available to the defense. He fails to persuade this Court, however, how the absence of his DNA from the bag would have had any effect on a jury who had watched a video completely corroborating Jarod Melvin's testimony that Appellant once threatened to kill him while placing a handgun in his mouth. As Appellant cannot show any beneficial result from the DNA evidence he claims was withheld, his **Brady**-based ineffective assistance of counsel claim must fail.

For the foregoing reasons, Appellant's appeal merits no relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/2/2021